Bean v. Barton County Court.

| 33 | 635 |
|----|-----|
| 45 | 659 |
| 33 | 635 |
| 47 | 649 |
| 33 | 635 |
| 49 | 414 |
| 33 | 635 |
| 75 | 189 |

JACOB BEAN, Relator, Appellant, v. COUNTY COURT OF BARTON COUNTY, Respondent.

**Kansas City Court of Appeals, February 4, 1889.**

1. **Local Option Election :** NOTICE OF: SUFFICIENCY OF. Where the notice of an election under the act of April 5, 1887, was published in a newspaper in its issues of December 22 and 29, 1887, and January 5 and 12, 1888, and the election was held January 13, 1888, twenty-two days after the first publication, such publication of notice is insufficient to authorize the holding of such election. ( *Following State ex rel. v. Tucker*, 32 Mo. App. 620 ).

2. ———— : CITIES OF THE FOURTH CLASS : WARDS OF. Section 4936, Revised Statutes, authorizes the board of aldermen of a city of the fourth class by ordinance to divide such city into not less than two wards, and where under this power the city of Lamar was divided into four wards, it is clear that as a city of the fourth class it could not be thrown into one ward.

3. ——— : ——— : ——. Section 5492, Revised Statutes, stipulates, "each voter shall vote only * * * in the election district * * * in which he resides," and the plain intent of the general ordinance dividing the city into four wards, being to fix upon the wards the character of election districts, the authorizing by ordinance of the opening of only one voting place for the whole city in the local option election, is sufficient to render the election void.

4. **Dram-shop License :** REFUSAL OF BY COUNTY COURT : MANDAMUS, THE REMEDY. The law is settled in this state that *mandamus* is the proper remedy where dram-shop license has been refused by the county court.

5. ——— : ———: APPEAL NO REMEDY. Appeals are allowed only where, in the nature of the case, the circuit court can try the matter anew and give such judgment as the county court should have given. The circuit court cannot issue dram-shop licenses and no appeal will lie. ( *Following Sheridan v. Flemming,* 93 Mo. 322 ).

*Appeal from the Barton Circuit Court.*—HON. D. P. STRATTON, Judge.

REVERSED AND REMANDED (*with direction to issue writ*).

Statement of the case by the court.

This was an action for *mandamus* commenced by the relator, against respondent—the county court of Barton county, Missouri—to require it to grant to relator a license to keep a dramshop in the city of Lamar, a city of the fourth class, containing twenty-five hundred inhabitants, and more, in Barton county, Missouri. The relator presented his petition to the county court, which was in due form, signed by two-thirds of the tax-paying citizens of the block in said city ( whereon such dramshop was desired ), which was accompanied by the proper bonds and affidavits, and in every way complied with the law, entitling him to the license prayed for, all of which was found and adjudged by the county court, in its order refusing relator the license, which was refused on the ground that a majority of the voters, at an election, had voted against the sale of intoxicating liquors. In other words, the refusal was on the ground

that the city of Lamar had, at an election held on January 13, 1888, adopted the "local option" law.

Acting on a petition of taxpayers and citizens presented therefor, the board of aldermen of the city of Lamar, on December 17, 1887, ordered that an election be held on the thirteenth day of January, 1888, to determine whether or not the sale of intoxicating liquors should be prohibited as provided by said "local option" law, approved April 5, 1887. Notice of such election was published in a weekly newspaper of said Barton county, in the issues of December 22 and 29, 1887, and January 5 and 12, 1888, and the election was held January 13, 1888. The said city of Lamar, long prior to this election, had been divided into four wards, which wards remained unchanged at the time of this election, and the city council had in due form provided for the manner of holding elections in said city.

Section eleven of an ordinance concerning elections provides for notice of elections to be given as follows:

"Notices of election, whether general or special, shall be given by the city clerk, by posting up three notices thereof, giving the time, place and purpose of the same, in each ward where such election is to be held, at least five days before the election."

Section sixteen provides for the qualification and residence of voters, as follows:

"Any person shall be a qualified voter in the city of Lamar, who shall be possessed of the qualifications required by the constitution of the state of Missouri, and who shall have resided in this city sixty days immediately preceding the election, and shall be a *bona-fide resident of the ward in which he offers to vote.*"

The city council, after the adoption of this election ordinance, passed the following, without amending in express terms, or in any way referring to the election ordinance, before passed in due form:

" Section 1.—All special elections, held in the city

of Lamar, except elections for selecting members of the board of aldermen, shall be held in the frame building, situated in the public square, in said city, and at all such special elections but one set of poll-books and one set of judges and clerks of election shall be required." Passed July 6, 1887.

The frame building mentioned in the foregoing ordinance where special elections should be held is situated in the third ward of the city, and it was here that the election in question was held, no polling place being held at any other point nor in either of the other three wards of the city. The circuit court denied the writ of *mandamus* prayed for and dismissed the petition, whereupon the relator appeals to this court.

*Tucker, Cole & Dye* and *Thurman, Wray & Stephens,* for appellant.

(1) The right to vote and hold an election is not a natural right, but a right derived from the law. McCrary on Elections, sec. 11, note 1 ; *Blair v. Ridgely* 41, Mo. 63. (2) An election held without the sanction of law is void, although every elector was present and participated in such election. Cooley on Tax. 245 ; McCrary on Elections, p. 78, sec. 112, and cases cited ; *State ex rel. v. Jenkins,* 43 Mo. 265 ; *In re Wooldridge,* 30 Mo. App. 612. (3) When elections are held for special purposes, by virtue of a law requiring notice to be given, such elections are void, unless notice is given for the time, and in the manner prescribed by such law. Cooley on Const. Lim. 603 ; *People v. McCune,* 11 Cal. 49 ; *State v. Van-Winkle,* 25 N. J. Law, 73 ; *People v. Secretary,* 9 Pac. R. 833 ; *Morgan v. Gloucester,* 44 N. J. Law, 138 ; *Jones v. People,* 1 Kan. 273 ; *George v. Oxford,* 16 Kan. 72 ; *Gassford v. Vaught,* 10 Kan. 162 ; *People v. Seale,* 52 Cal. 71 ; *Haddox v. Cork Co.,* 79 Va. 677 ; *Stephens v. People,* 79 Ill. 339 ; *Beal v. Ray,* 17 Ind. 554 ; *McPike v. Penn,* 51 Mo. 64 ; *State v. Railroad,* 75 Mo. 526 ;

*Hubbard v. Town*, 61 Wis. 399 ; *Jordon v. School District*, 38 Me 165 ; McCrary on Elections, secs. 145, 150. (4) The law authorizing an election, for the purpose of determining whether or not intoxicating liquors shall be sold in cities, etc., requires a notice of the time and place of holding such election to be given by a' publication for " four consecutive weeks " in some newspaper.　Session Acts, 1887, p. 181, sec. 3.　Notice by publication for "four consecutive weeks," means twenty-eight days notice, given by publishing it for four consecutive weeks in some newspaper, that is, one week would be seven days, two weeks fourteen days, etc., each week ending with the day before the publication day.　*Reed v. Sextons*, 20 Kan. 195 ; *Hall & Douglass v. Cassidy*, 25 Miss. ; *Hill v. Faison*, 27 Texas, 428 ; *In Matter Whitehall Twp.* 47 Pa. 156 ; *Mitchell v. Woodson*, 37 Miss. 567 ; 12 C. E. Green, 70 ; *Pennell & Levett v. Monroe*, 30 Ark. 661 ; *Collins v. Smith*, 57 Wis. 284 ; *Eaton v. Lyman*, 33 Wis. 37 ; *Herick v. Groves*, 16 Wis. 157 ; *Coopmine v. Oneal*, 47 Wis. 593 ; *Stanford v. Worn*, 27 Cal. 171 ; *Haywood v. Russell*, 44 Mo. 252 ; *Early v. Doe*, 16 How. 610 ; *Bank v. Bank*, 89 N. Y. 397 ; *Ward v. Walters*, 63 Wis. 39 ; *People v. Martin*, 12 Cal. 409 ; *Barry v. Bank*, 5 Cald. 588 ; *Hoover v. Mear*, 16 Kansas, 11 ; *Beal v. Ray*, 17 Ind. 554 ; *Haddox v. Clarke Co.*, 79 Va. 677 ; *George v. Oxford*, 16 Kansas, 72 ; *Stephens v. People*, 89 Ill. 337.　The election districts in the city of Lamar are the wards created by ordinance authorized by the statute. R. S., secs. 4936, 5492 ; McCrary on Elections, sec. 65 and note 1 ; *Chase v. Miller*, 2 Am. Law Reg. ( N. S.) 146 ; City Ordinance, No. 1, secs. 1–10.　An elector can only vote in the election district in which he lives. R. S. 1879, sec. 5492 ; McCrary on Elections, sec. 98 ; *Chase v. Miller*, 2 Am. Law Reg. ( N. S.) 146 ; *People v. Holihon*, 26 Mich. 116 ; *Bowland v. Hilduth*, 26 Cal. 161.　(5) The ordinance authorizing special elections in the city of Lamar is void, being in conflict with the general election

ordinance, and the statute regulating the place of voting in cities and towns. There is no authority in the statute for cities holding special elections in any other manner than general municipal elections or at any other place than that fixed by law. *Chadwick v. Melvin*, 68 Pa. St. 484; Brightley's Election Cases, 251; McCrary on Elections sec. 126. (6) The city council has no power to pass ordinances, except as expressly delegated by the statute, and the statute nowhere authorizes the passage of such an ordinance; that is, an ordinance authorizing elections to be held for special purposes in any other manner than elections held for general purposes, in the municipality. *Knox City v. Thompson*, 19 Mo. App. 523; *Rumsey Mfg. Co. v. Schell City*, 21 Mo. App. 171; *Thrush v. City*, 21 Mo. App. 394. (7) What is called the "local option" law requires that the election therein provided for shall be held in accordance with the ordinances governing municipal elections, which means, evidently, the ordinances governing municipal elections in general. Sess. Acts 1887, p. 180, sec. 2. (8) A failure to prepare the election machinery, in each election district, renders the election void. *State v. Fitzgerald*, 32 N. Y. 788; *Marshall v. Kerns*, 11 Swan (Tenn.) 68; McCrary on Elections, sec. 12; 46 Ill. 416. The question of whether or not a valid election was held may be tried in a proceeding by *mandamus*, especially, where the right sought to be enforced existed, if a valid election had not been held. *State v. Commissioners*, 35 Kan. 640; McCrary on Elections, sec. 366; *In re Wooldridge*, 30 Mo. App. 612. (9) *Mandamus* is the proper remedy to require the county court to grant a dram-shop license to keep a dramshop, when two-thirds of the tax-paying citizens in a city of twenty-five hundred inhabitants, in due form, petition for the same.

*Robinson & Harkless*, with *A. C. Burnett*, for respondent.

(1) *Mandamus* will not lie to the county court,

because the relator had the right to an appeal from the judgment of the county court, and to contest election, hence, *mandamus* will not lie. R. S., 1879, secs. 1210, 1102; *Colville v. Judy*, 73 Mo. 651; *McVay v. McVey*, 51 Mo. 406; *Sheridan v. Fleming*, 93 Mo. 321; *State ex rel. v. Buhler*, 3 S. W. Rep. 68; *State ex rel. v. Marshall*, 82 Mo. 484; *State ex rel. v. Megown*, 89 Mo. 156; *State v. Lubeck*, 85 Mo. 338; *State ex rel. v. Lubke*, 15 Mo. App. 152; 85 Mo. 338; *Mansfield v. Fuller*, 50 Mo. 338. (2) The frame building in the public square was the legal and proper place to vote. The board had power to pass the special election ordinance. *State v. Harwood*, 13 Pac. Rep. 212; *Farrinton v. Turner*, 51 Am. Rep. 88; *Duncan v. Shenk*, 9 N. E. Rep. 69; 1 Waite A. & D. 609; *State v. Mayor*, 33 N. J. L. 57. (3) Where the statutes do not declare certain acts to be essential to the validity of an election, they will be regarded as mandatory, if they do, and directory if they do not, affect the actual merits of the election. *Anderson v. Winfree*, 4 S. W. Rep. 355; *Fowler v. State*, 3 S. W. Rep. 255; McCrary on Elections, sec. 126; *Duncan v. Shenk*, 9 N. E. Rep. 692. (4) There was legal authority for holding the local option election, and the only question is, was the election duly held. Sess. Acts. 1887, p. 179. (5) Actual notice and participation in the election sufficient. *Fowler v. State*, 3 S. W. Rep. 255; *Anderson v. Winfree*, 4 S. W. Rep. 355; *Clark v. Geathers*, 5 S. W. Rep. 576; *Cleland v. Potter*, 24 Am. Rep. 273; *Simmons v. People*, 9 N. E. Rep. 220; *Light v. State*, 14 Kansas, 489; *Morgan v. Gloucester*, 44 N. J. L. 138; *McPike v. Pen*, 51 Mo. 64. (6) Statutory notice not essential to validity of election, when the voters had actual notice, and have participated generally in the election. *State v. Oris*, 20 Wis. 235; *State ex rel. v. Goetze*, 22 Wis. 363; *State v. McKinney*, 25 Wis. 416; *Farrington v. Turner*, 51 Am. Rep. 90; *Clark v.*

*Geathers*, 5 S. W. Rep. 576; *Weal v. Smith*, 7 S. W. Rep. 165; *Commonwealth v. Smith*, 132 Mass. 289; *Disham v. Smith*, 10 Iowa, 212; *Anderson v. Winfree*, 4 S. W. Rep. 355; *Fowler v. State*, 3 S. W. Rep. 255; *Territory v. County*, 12 Pac. Rep. 730; *Cleland v. Potter*, 24 Am. Rep. 273; McCrary on Elections, secs. 141, 151; *State v. Berg*, 76 Mo. 136; *State v. Jones*, 19 Ind. 356. (7) The notice of election was published in a weekly paper, on Thursday, in four consecutive numbers, and in four consecutive weeks, which is sufficient under section three, local option law. *Haywood v. Russell*, 44 Mo. 253; *Wood v. Morehouse*, 45 N. Y. 368; *Olcott v. Robinson*, 21 N. Y. 151; *Rorkendorf v. Taylor*, 4 Peters, 349; *Sweet v. Sprague*, 55 Me. 190; *Wood v. Morehouse*, 89 N. Y. 399; *Bennett v. Hetherington*, 41 Iowa, 142; *Rounsaville v. Hazen*, 33 Kan. 71; Wade on Notice [2 Ed.] 551. (8) A week is a period of seven days, commencing with Sunday. Bouvier's Law Dict., title "week;" *Rorkendorff v. Taylor*, 4 Pet. [U. S.] 96.

GILL, J.—I. The main feature of this controversy, to-wit, the sufficiency or insufficiency of the published notice, whether or not the publication thereof in a newspaper beginning with December 22, 1887, and ending January 12, 1888, the election being held January 13, 1888, twenty-two days after the first publication, is settled by *State ex rel. v. Tucker*, 32 Mo. App. 620. We hold now, as was held there, that this notice does not fill the requirements of section 3 of the law known as the "local option" law. Acts of 1887, p. 181. Some other points have, however, been presented in this case which it may be proper to notice in order to save future litigation.

II. We do not believe that the board of aldermen of the city of Lamar was authorized under the law to hold this election at the *one* place—in *one* ward—when in fact there were in said city four election districts and

wards. Section 4936, Revised Statutes, authorizes the board of aldermen of a city of the fourth class (and such is Lamar) by ordinance to divide such city into *not less than two wards*. Under this power Lamar had been divided into *four* wards. It is clear that as a city of the fourth class it could not be thrown into *one* ward. The board of aldermen is interdicted from so doing by the organic law of its municipal existence.

Section 2 of the "local option" law provides this "election to be held in such city, to be voted on by the *qualified voters thereof* and *no others*." As to who are *qualified* voters entitled to vote at such election resort must be had to the general laws of the state. This is prescribed by section 5492, Revised Statutes of Missouri, wherein it is provided that "every male citizen * * * who is over the age of twenty-one years, possessing the following qualifications, shall be entitled to vote at all elections by the people," and then fixing the necessary residence in the state, county and city, the statute further stipulates, "and each voter shall vote only in the township in which he resides, or if in a town or city, then in the election district therein in which he resides." So it may be well said that a man may be a qualified voter in one ward, or in one election district, and an illegal voter in some other ward or election district. The spirit of this general state law was followed, too, by the law-making body of Lamar when it enacted the following section of the ordinance concerning elections: Section sixteen provides for the qualification and residence of voters, as follows: "Any person shall be a qualified voter in the city of Lamar, who shall be possessed of the qualifications required by the constitution of the state of Missouri, and who shall have resided in this city sixty days immediately preceding the election, and shall be a *bona-fide resident of the ward in which he offers to vote*."

By the provisions of this general ordinance the intent is plain to fix upon the different wards the character of election districts, if not already so fixed by the common intent of the statutes. What must be said, then, of the consistency of the action of the Lamar board of aldermen in providing for the holding of this local option election at one place—in one ward—for the entire city, as compared with the provisions of law above referred to? Who were qualified voters when presenting themselves at this frame building located in the third ward? Those 'gentlemen whose *bona-fide* residence may have been in the first, second or fourth election districts were not qualified to vote, because the general law provides "that each voter shall vote only in the election district in which he resides." Was it ever, then, the intention of the law to permit one ward or one election district to cast the ballot and determine a governmental status for the four districts? We find no adjudicated case covering this exact question; but we do think, in the light of reason and the general rules governing such questions, that this election, for that reason also, must be declared void. McCrary on Elections, sec. 114, and authorities.

III. That *mandamus*, too, is the proper remedy, we think is the settled law of this state. *State ex rel. v. Nodaway Co. Court*, 80 Mo. 601–609 ; *Sheridan v. Fleming*, 93 Mo. 322–325.

In answer to respondent's claim that *mandamus* is not permitted because, as counsel assert, there is a legal remedy by an appeal from the order of the county court refusing license to the relator, we say here, as said by the supreme court in case last cited, that the relator had no such right. "Appeals are allowed only where, in the nature of the case, the circuit court can try the matter anew, and give such judgment as the county court should have given." The circuit court of Barton county cannot issue dram-shop licenses, and therefore

no appeal will lie to such court from an order thereon by the county court.

The result, then, of our holding is, that the circuit court committed error in refusing the peremptory writ of *mandamus*, and we reverse and remand the cause with instructions to the court below to issue the writ as prayed. All concur.