STATE OF MISSOURI at the Relation of the City of Berkeley, Relator, v. W. H. HOLMES, State Auditor of Missouri, Respondent.—No. 41316.—219 S. W. (2d) 650.

Court en Banc, April 11, 1949.

*Calhoun & Boisseau* for relator.

*J. E. Taylor,* Attorney General, and *George W. Crowley,* Assistant Attorney General, for respondent.

[650] HYDE, J.—Mandamus to compel the State Auditor to register bonds of the City of Berkeley, a fourth class city in St. Louis County, under Section 3306, R. S. 1939, Mo. Stat. Ann. The question for decision is whether the special election authorizing the bonds was invalid because of insufficient publication of notice.

The notice of this election, held December 2, 1947, was published on November 13, 20 and 26, 1947, in a St. Louis County newspaper published in the nearby city of Ferguson, there being no newspaper in Berkeley. Thus the first publication was only nineteen days before the date of the election. Section 7369, R. S. 1939, Mo. Stat. Ann. (Amended Laws 1945, p. 1301) provides that for the purpose of testing the sense of the voters of such a city on a proposition to incur debt, the Council "shall order an election to be held of which they shall give notice signed by the City Clerk." It further provides that "such notice shall be advertised by publication once a week for three consecutive weeks in a newspaper published in the City" or

if there be none "then in a newspaper published in the county wherein is situate such city;" and that "the first publication of the notice shall be made at least twenty-one days before, and the last shall be within two weeks of the date of the election." The State Auditor contends that the election was invalid because of failure to comply with this statute since the first notice was published less than twenty-one days before the date of the election.

Relator claims a substantial compliance, which it says was sufficient to validate the election, because in addition to the notice published three times in November there was also a news item published in the same Ferguson paper on October 23, 1947, giving the information contained in the November notice; and because actual notice of the election was given in the following manner: "Prior to the election maps were printed showing the road to be improved with the proceeds of the bonds proposed to be issued, and a copy of the map, upon which appeared the date of the election, was delivered to each residence in the City, to the householder or a member of his family, by an alderman of the City." There were 488 votes cast in the special election of December 2, 1947 and more than the required two-thirds of those voting voted for the increase of debt, namely, 342 votes for the [651] bonds and 145 against them. The average of all previous special elections held in the city was 242 votes. The average of all previous elections, general and special, was 394 votes; and the average of all previous general elections was 462 votes. The largest vote previously cast in a special election was 593, in June 1947, and in a previous general election, 702 in 1940.

Relator relies on cases such as Weisgerber v. Nez Perce County, (Idaho) 197 Pac. 562 and Hill v. Skinner, (N. C.) 86 S. E. 351. [See also Sonoma County v. Sanborn, (Cal.) 36 Pac. (2d) 419; Gollar v. Louisville, (Ky.) 219 S. W. 421; City of Ardmore v. State, (Okla.) 104 Pac. 913; Rands v. Clarke County, (Wash.) 139 Pac. 1090.] The rule for which relator contends is stated in the Weisgerber case (a bond election case) as follows: "Statutory directions as to the time and manner of giving notice of elections are mandatory upon the officers charged with the duty of calling the election, and will be upheld strictly in a direct action instituted before an election; but after an election has been held, such statutory requirements are directory, unless it appears that the failure to give notice for the full time specified by the statute has prevented electors from giving a full and free expression of their will at the election, or unless the statute contains a further provision, the necessary effect of which is that failure to give notice for the statutory time will render the election void." The Court cited many cases from other states in support of these conclusions. However, it recognized that "in some jurisdictions it is held that a strict compliance with the statutory requirements as to the time of giving notice of an election is an essential

requirement of its validity." An example of these is Pollard v. City of Norwalk, 142 Atl. 807, in which the Supreme Court of Connecticut held invalid bonds authorized at an election of which only 13 days' notice was given when the law required "at least two weeks." The Court held that the provision for time of notice "must be complied with literally" before there could be valid action, saying: "The votes of a meeting of which notice has been given for less than the period required by the statute, though it be only for a single day, 'are no more binding upon the town than if the meeting had been held without notice, or had been a mere fortuitous assembling of any portion of the inhabitants of the town.'"

Many cases in support of each of these conflicting views are collected and discussed in an annotation in 119 A. L. R. 661. [See also 18 Am. Jur. 247, §§109-111; 43 Am. Jur. 340, §86; 29 C. J. S. 95, §§72-74; 1 Jones Bonds & Bond Securities 203, §212; 5 McQuillin, Municipal Corporations 1405, §2356; State ex rel. McNeill v. Long, 63 Pac. (2d) 60, in which both views were well presented in a five to four decision of the Supreme Court of Oklahoma.] It is, of course, partly a question of construction of the particular statutes involved in each case. It is generally held that laws requiring notice of general elections, the time of which is fixed by law, are directory only and that their principal purpose is to remind the voters of such elections, as to which it is presumed that they know the time, place and usual purposes without additional notice. However, a special election is a different matter; and even special questions submitted at general elections are usually held to be special elections. There is much authority that there must be compliance with provisions for time of notice of special elections and that failure to give notice for the time required by the statutes authorizing a special election invalidates it. [Some of the most recent cases so holding are: Whittle v. Whitley, (Ga.) 44 S. E. (2d) 241; Bilek v. City of Chicago, (Ill.) 71 N. E. (2d) 789; Hansen v. Malheur County, (Ore.) 86 Pac. (2d) 964; Appeal of Harper, (Pa.) 29 Atl. (2d) 236; Turner v. Lewie, (Tex.) 201 S. W. (2d) 86; Coffee v. Lieb, (Tex.) 107 S. W. (2d) 406. Recent cases taking the opposite view are Hall v. Sturgill, (Ky.) 204 S. W. (2d) 496; Hanover v. Boyd, (Tenn.) 121 S. W. (2d) 120.] Some cases make a distinction on the basis of substantial compliance between the situation of no notice at all and notice for part of the required period. Apparently the only direct Missouri authorities on this question are decisions of our Courts of Appeals on [652] special local option elections. [State ex rel. Doran v. County Court of Johnson County, 138 Mo. App. 427, 122 S. W. 316; State ex rel. Hennesmeyer v. Reid, 134 Mo. App. 582, 114 S. W. 1116; State ex rel. v. Martin, 83 Mo. App. 55; State v. Kampman, 75 Mo. App. 188; State v. Kaufman, 45 Mo. App. 656; Bean v. Barton County Court, 33 Mo. App. 635; State ex rel. George Weber v. Tucker, 32 Mo. App. 620.]

These cases establish the rule that strict compliance with statutory provisions for time of notice is essential to the validity of such an election.

Likewise, in McPike v. Pen, 51 Mo. 63, this Court held a special election invalid for lack of any official notice (election to vote on subscribing to the capital stock of a railroad) although the act authorizing such an election contained no provision as to notice, saying: "Although the act is silent upon this subject, we must assume either that the obligation to direct a proper notice is implied in the authority to order an election, or that the notice must be given as required in the general election law." This ruling was followed in State v. St. Louis, Kansas City & Northern Ry. Co., 75 Mo. 526, in which an election for increase of taxes was held invalid because of failure to give any notice. This Court in the McPike case further said: "The notice as actually given cannot help the matter. Two written bills, unsigned by any one, were posted up in a public place in the township. But they were not put up by any legal authority, and could have no legal force or effect. The law by plain implication provides for notice in one of the two ways I have indicated, and a volunteer one will not meet its requirements." So also in Southworth v. Mayor of Glasgow, 232 Mo. 108, 132 S. W. 1168, this Court, while holding the notice therein sufficient, said: "Of course, the personal notice sent out by the mayor to the voters would be of no avail; if the statutory notice was insufficient the election would fail. Such personal notices would only tend to indicate absolute fairness in the election." This may have been dictum in that case but we think it is correct, and that information gained about a proposed special election by voters, from unofficial or informal sources, cannot dispense with an official notice required by law. Some of the reasons for this are well stated in the Texas case of Turner v. Lewie, supra, as follows: "It is not enough that some or even all of the voters learned of the election through reading news items, or by conversations with other citizens, or by hearing of it through any means other than the notices required to be given by the statutes regulating the election. If there is not a substantial compliance with the law in the proceedings leading up to the election, there is no valid election. The will of the majority of the voters might be expressed in any number of ways, as in a mass meeting, or by petition, and yet not amount to an election. Our system of government depends for its existence on orderly elections, held strictly in accordance with the law, and surrounded by all of the safeguards which the lawmakers have seen fit to impose. It is important that the voters receive legal notice of the election and the purposes for which it is to be held."

In some cases, the courts have found that the wording of the applicable statute did not require holding that the notice requirements were mandatory. An example is Phillips v. City of Rock Hill, (S. C.)

198 S. E. 604, 119 A. L. R. 656, where the statute provided that "notice of the election *shall be deemed sufficiently given* if there be published twice in a newspaper printed in such city or town, once at least twenty (20) days before the election and once within the period of fifteen (15) days before the election, a notice stating the day of election, etc." The Court said: "We have italicized what seems to us to be the decisive phrase in this text. It must be observed that the statute does not provide an exclusive method of the giving of such notice: It does not state that the notice of the election shall be given in this or in that manner, but on the contrary very clearly states that notice given in the manner set forth in the Statute shall be deemed sufficient. The statute here does not lay down a specific mandate but on the contrary merely directs the manner in which notice could be given. It is directory and not mandatory and any method [653] of giving notice of the election which could reasonably be held to have served the purpose for which the notice was intended would likewise, as a matter of law, be held sufficient with the limitation, of course, that the manner, method and time would not be such as to affect the fairness of the election."

Our Section 7369 does say that notice of such election shall be given in a certain specified way; and our conclusion is that the time of notice specified therein is a mandatory requirement which must be complied with to have a valid special election authorizing an increase in the indebtedness of the City. The Legislature was very specific in stating these requirements as to time of notice, and used mandatory language concerning them, and we do not think we should undertake to modify them or hold that anything less is a substantial compliance with them. Variations as to form of notice or of ballots, which could not mislead voters, may reasonably be held to be substantial compliance. [State ex rel. Mercer County v. Gordon, 242 Mo. 615, 147 S. W. 795; State ex rel. City of Memphis v. Hackman, 273 Mo. 670, 202 S. W. 7.] However, when time requirements are so specifically stated as those in Section 7369, it seems to us that calling anything less substantial performance would amount to judicially amending the statute. A special election to increase indebtedness, and thereby raise taxes of the residents of the City for a considerable period, is an important matter of which voters and property owners should have legal notice and we think they are entitled to rely on having the kind of official notice the statute requires. We further believe it would be a matter of speculation and conjecture for us to attempt to determine that some other notice or source of information was a proper or effective substitute for the very specific time of notice requirements of the statute under the circumstances of this case. It may be significant that over 100 more votes (21% more) were cast in a special election in the City six months before the one herein involved. In any event, we do not think it is unreasonable (no question

1244

of innocent purchasers being involved) to require strict compliance with the requirements of this statute before compelling the State Auditor to register these bonds, and to follow the rule of the previous. Missouri decisions, as to time of notice of a special election. We, therefore, hold that, because of failure to comply with them, the election was invalid and that the State Auditor should not be required to register these bonds.

Relator also says that we should not hold the bonds invalid because courts have no jurisdiction to inquire into the validity of a bond election in the absence of a specific statute giving such jurisdiction, citing State ex rel. Wahl v. Speer, 284 Mo. 45, 223 S. W. 655; State ex rel. Jackson County v. Waltner, 340 Mo. 137, 100 S. W. (2d) 272; Arkansas-Missouri Power Corporation v. City of Potosi, 355 Mo. 356, 196 S. W. (2d) 152. These cases hold that an election contest, on issues of fraud in conducting an election or in voting therein, is not a matter of equity or common law jurisdiction but must be provided by statute. If relator is right about our lack of jurisdiction herein (which is not the case) the only result that could be reached would be the same one we have reached on the merits, namely to quash our alternative writ. However, in this case, the City has invoked our original jurisdiction, seeking to have us declare the bonds valid and require the State Auditor to register them as such. To have such relief, Relator must show a clear right to it and the cases cited have no bearing on this issue.

The alternative writ of mandamus heretofore issued is quashed. All concur.