CITY OF LEXINGTON, Plaintiff–
Respondent,

v.

Homer T. SEATON, Jr. and John G.
Oliva, Defendant–Appellant.

No. WD 43886.

Missouri Court of Appeals,
Western District.

Nov. 19, 1991.

Werner A. Moentmann, Richmond, for defendant-appellant.

Weldon Wayne Perry, Jr., Pros. Atty., Lexington, for plaintiff-respondent.

Before LOWENSTEIN, C.J., FENNER and ULRICH, JJ.

LOWENSTEIN, Chief Judge.

The City of Lexington ("City"), operating a sewer treatment plant, sued the Defendants for unpaid sewer bills and received a money judgment of nearly $10,000. The charges were imposed on users by the City to pay off previously issued revenue bonds. The Defendants appealed the judgment on the grounds that 1) the sewer charge was not lawfully imposed because the City did not give proper notice of public hearings on the charge, 2) the underlying sewer bonds were unauthorized because the City's bond issue had failed, 3) the failure of the election led to the sewer charges violating the "Hancock Amendment," and, 4) the 1% interest charged Defendants on their unpaid sewer bills was invalid as in excess of the Missouri statutory rate. The City cross-appealed the denial of its attorney's fees requested under § 250.140, RSMo 1986. The appeal and cross appeal were to the state Supreme Court which transferred the case to this court for adjudication.

The facts of this case begin with an August 5, 1980, election in the City of Lexington on sewer revenue bonds pursuant to § 250.070, RSMo 1986. This statute requires *city* sewer bond issues to pass by a simple majority, while *sewer districts* require a 4/7ths majority. The returns of the Lexington bond election reflect 654 "Yes" votes and 628 "No" votes, a simple majority. However, on August 12, 1980, the Lexington City Council ("Council") passed an ordinance declaring the result of the election as a failure, having not received a 4/7ths majority. Five months later, on January 19, 1981, the Council enacted a second ordinance, which purported to repeal the prior ordinance, and then declared the sewer bond issue had passed, having received a simple majority. Nearly five years later, on December 9, 1985, the Council passed an ordinance authorizing the actual issuance of sewer revenue bonds deemed approved back in 1981, and discussed the homeowner use charge. Approximately 12 residents commented on the sewer charge, and the matter was turned over to the Finance Committee for reexamination. On December 18, 1985, the Finance Committee of the Council met to discuss the sewer charge, with approximately 150 citizens attending, and, on January 14, 1986, the Council passed an ordinance implementing the charge. Under § 250.233, RSMo 1986, public hearings are required prior to imposition of sewer rates, and 30 days notice is required prior to the public hearings. However, the only "notice" of the meetings in Lexington was through general news articles in *The Lexington News* from early to mid-December covering the sewer charge issue. The Defendants Seaton and Oliva have never paid any of the sewer bills sent to their personal residences or to their rental properties. The City then sued for non-payment, re-

ceived judgment, and this appeal ensued. In analyzing the points on appeal, logic demands that Defendants' second point be addressed first.

### I. Validity of the 1980 Bond Election

The court first stresses that this case is an appeal from a collection suit. In defending the suit, the Defendants have raised the issue of the validity of the 1980 Lexington sewer bond election. The court does not decide the validity of this election, finding that this is neither the procedure nor the forum for this issue, as discussed below.

The goal of Missouri's Comprehensive Election Act of 1977 is to "simplify, clarify, and harmonize" Missouri law, § 115.001, RSMo 1986, and "shall be construed and applied so as to accomplish this purpose," § 115.003, RSMo 1986.[1] Yet from the actions of the City and the county clerk in the 1980 bond election, Missouri local government apparently finds nothing clear or simple about the directives of Chapter 115. *See* Table 1. It is the court's understanding from a straightforward reading of Chapter 115's provisions, that the designated election authority is to have complete, non-delegable, and exclusive authority over the conduct and procedure of any election in the state of Missouri.[2] However, in this case, the City took to itself certain statutory powers and duties placed upon the county clerk in the bond election. *See* Table 1, para. 3. The City chose, under color of a city ordinance, to declare the result of an election, rather than permit the county clerk as election authority to do so. *See*

Table 1, para. 3(c). Section 115.507 states that the election authority[3]

> *shall issue a statement announcing the result* of each election held within its jurisdiction *and shall certify the returns* to each political subdivision and special district submitting a candidate or question at the election. Section 115.507.1 (emphasis added).[4]

Two problems apparently exist with the 1980 bond election in Lexington: 1) the election authority (the Lafayette county clerk) never made an official correct announcement of the result of the election, as required by statute, *see* Table 1, para. 3(b); and 2) the Lexington City Council, in appropriating the right to announce the result, did so incorrectly, *see* Table 1, para. 3(c). The City argues however that the abstract of the votes represents the "result" of the election. In one sense this is true since the result of an election is simply the legal (and mathematical) conclusion from the raw numbers generated by the voters. But, that abstract of votes is *not* a self-enforcing document, and there must still be a legal conclusion, that is, a result, declared. Otherwise, the statutory directives of Chapter 115 regarding verification boards, announcement of results, certification of returns, and issuance of certificates of election are meaningless. The letter and spirit of the Missouri election laws demand an official announcement of either the winning candidate, or the passage or failure of a proposition, made within the eight days allowed by § 115.507 and under the auspices of the designated election authority.

Under the facts of this case, no such declaration of result was made, and the

---

**1.** All citations to the Missouri election laws are RSMo 1986.

**2.** The introducing provision to Missouri's election law states that "[n]otwithstanding any other provision of law to the contrary" the election provisions "shall apply to all public elections in the state, except election for which ownership of real property is required," § 115.005, RSMo 1986. Furthermore, "each election authority shall conduct all public elections within its jurisdiction," § 115.023.1, subject to certain exceptions where the *clerk* of a political subdivision may assume all responsibilities of the election authority pertaining to a particular election, § 115.023.4, RSMo 1986. Finally, the county

clerk is the election authority, unless the city or county maintains a board of election commissioners, who are then the election authority, § 115.015.

**3.** The court is aware that § 115.507 is a directive to the "verification board," which is made up of the board of election commissioners where there is one, § 115.499.1, or the county clerk/election authority and two "verification judges," § 115.499.2.

**4.** Under § 115.507.2, the verification board also draws an "abstract of the votes cast" which becomes the "official returns of the election."

remaining question is what, if any, remedy is appropriate at this time. What should have been done, by the City, by the election authority, or by the registered voters, to correct the mistakes in announcing the result of this election? There appear to be three routes. One is that which the City took (to merely pass a new ordinance), another would be an election contest, and possibly a third is an equitable remedy of one type or another.

The City's route was wrong for two reasons. As said before, the City had no authority to declare the result of the election in the first place. *See* Table 1, para. 3. Although the Council had in place an ordinance directing it to receive the certified returns in a city election, declare the result, and issue certificates of election, the court fails to see how the Lexington City Council may transfer statutory powers placed elsewhere by the legislature.[5] Also, the Council when declaring an election under its ordinance is not acting as a body of city legislators, but rather as the election authority governed by Missouri law. Therefore, any "error-correcting" theories of a legislative body do not support the Council's passage of the second ordinance claiming passage of the bond issue. Nor is there any power of a body declaring an election result to re-declare it. In the dusty but spirited Missouri case of *Bowen v. Hixon*, 45 Mo. 340 (1870), the county clerk issued two conflicting certificates of election. The *Bowen* court held a second certificate to be wholly void, since

> [w]hen this duty of the clerk was fully performed, it was performed once and forever, and could never be repeated. To suppose that it could be renewed—that the canvass of one day could be repeated the next, and counter certificates be issued to different contestants as new

light or influence was brought to bear upon the mind of the clerk—would render the whole proceeding a farce. *Id.* at 343.

The *Bowen* court noted that even if the clerk could recount on his own action, he "certainly could not do so after the expiration of the eight days limited by statute." *Id.* at 344. The eight days is analogous to the statutory period currently required by Missouri law in § 115.507, within which the election authority must announce the results of an election. In addition to the strong language of *Bowen*, there is no statutory guideline allowing any sort of "reconvening" of those who determine the result of an election, other than an election contest re-count. *See* Table 1, para. 5. In sum, the City chose the wrong remedy for its initial mistake in declaring the result of the sewer bond election.

A second route for the City or the voters would have been an election contest. Since election contests have consistently centered on the *conduct* of the election, it is unclear whether one could contest the *result* of an election where no error in conduct or counting is alleged. The recent Missouri Supreme Court opinion of *Board of Election Commissioners of St. Louis County v. Knipp*, 784 S.W.2d 797 (Mo. banc 1990), may be helpful. In *Knipp*, the Board[6] brought an election contest, requesting as remedy a new election.[7] The *Knipp* court decided that the drastic new election remedy, "is appropriate where the validity of the *entire* election is under suspicion, not simply the *result* of the election," *Id.* at 799 (emphasis in original), calling the "result" the "official announcement of the winning candidate." This appears to allow an election contest when only a mistake in declaring the result occurs, yet still, in *Knipp* the mistake lay in the initial count

---

5. In *State ex rel. Patterson v. Tucker*, 519 S.W.2d 22, 25 (Mo.App.1975), the court was faced with a virtually identical city ordinance, and expressed doubts as to the validity. Also important is § 71.010, RSMo 1986, requiring municipal ordinances to conform to state law on the same subject.

6. Section 115.600 gives the election authority standing to bring an election contest if "con-

vinced that errors of omission or commission have occurred ..."

7. Section 115.553 states that the "result of any election on any question may be contested," while a candidate for office may contest the "correctness of the returns." It is unclear as to why the legislature used different words here.

of the votes themselves, not the legal conclusion therefrom. In contrast is *Bowen v. Hixon*, 35 Mo. 340 (1870), where the county clerk incorrectly announced the results yet no one challenged the returns. The *Bowen* court dismissed an election contest and suggested a quo warranto suit. Although it is unclear to this court whether an election contest would be appropriate here, the question is moot given that no one filed within the statutory 30 day period. *See* Table 1, para. 4 & 6.

The election contest rules fully protect the finality of the *conduct* of an election, but this court sees the need for other common law remedies to address possible blunders in declaring the result of a proposition election (where a simple majority may not determine the "winner"), or for the administrative tasks following a race for office (such as issuance of the certificate of election). Briefly, the potential common law equitable remedies in an election are quo warranto, writ of mandamus, writ of prohibition, and a declaratory judgment. *Bowen v. Hixon*, 45 Mo. at 345, suggested a quo warranto as a means to straighten out the problems involved in two contradicting certificates issued by the election authority. In *State ex rel. Patterson v. Tucker*, 519 S.W.2d 22, 24 (Mo.App.1975), the court supported the use of mandamus to compel the "proper officials to discharge their ministerial duties in canvassing votes or returns;" the duties included issuing certificates of election. In *State ex re. St. Joseph Light & Power Co. v. Parks*, 409 S.W.2d 199, 209 (Mo.App.1966), however, the court found mandamus inappropriate, but only because the election returns had been lost before being certified and hence no one could be forced to declare the unknown result of the election. In *Clark v. City of Trenton*, 591 S.W.2d 257, 259–60 (Mo.App.1979), the plaintiffs brought a declaratory judgment suit attempting to void a city sales tax for failure to comply with the sales tax election notice requirements. Although the suit was dismissed as a "thinly disguised effort to bypass" the election contest time limits, *Clark* may be distinguished from the case at bar because it involved the conduct of an election. *Id.* at 259. At the least, these cases demonstrate a willingness by Missouri courts to entertain equitable suits to remedy certain defects in election procedure.

■ Despite this lengthy discussion of election law remedies and the haphazard way the City handled the question of voter approval of the sewer bonds, the court will not strike down the 1980 sewer bond election in Lexington for two reasons. First, the Defendants attempt to defend a sewer charge collection suit by arguing the invalidity of the underlying bond issue. A collection suit by the City of Lexington is not an equitable action to determine the validity of these bonds, and neither may it substitute as such. If a party wishes to debate the validity of these sewer bonds, they should do it through a properly brought direct attack on an equitable ground, subject, of course, to appropriate equitable defenses such as laches. Second, this court declines to lightly address the validity of municipal bonds issued years ago, when the matter was not fully argued at the trial level. In *State, et al., Plaza Prop. v. Kansas City*, 687 S.W.2d 875, 876 (Mo. banc 1985), the court held that preissue bond validity was an inappropriate subject for a fictional quo warranto, suggesting instead a declaratory judgment action. The Missouri Supreme Court stated that "the ends of justice will be served best when those most interested in the project have the most convenient and best opportunity for being heard on the matter." *Id.* This court agrees that an issue as important to the City, the citizens of Lexington, and bond holders, should be directly faced and fully explored at the trial level in an adversary hearing. For these reasons, the Defendants' second point on appeal is denied.

Although the above discussion addresses the corrective action appropriate in this case, the court wishes to point out that the election laws on non-statewide propositions or questions are perplexing at best. Of great confusion and contradiction are the meanings given "result" and "returns", as well as whose ultimate duty it is to declare the outcome of an election on a proposition. Two recent Missouri Supreme Court cases

are less than beneficial on this point, both being involved in finding answers to questions of election contest procedure. In *Board of Election Commissioners of St. Louis County v. Knipp,* 784 S.W.2d 797 (Mo. banc 1990), discussed above, the court needed to resolve a question regarding the available remedy in an election contest. To do so, the *Knipp* court distinguished "result" from "conduct" of an election, positively stating that "[w]hile the conduct of an election obviously affects its outcome, the "result" of an election is the official announcement of the winning candidate." *Id.* at 798. In contrast, the earlier Missouri Supreme Court case, *Beatty v. Metropolitan St. Louis Sewer Dist.,* 700 S.W.2d 831 (Mo. banc 1985), used the reasoning that "announcement of the result" of an election was one and the same with the "certification of the returns," in order to decide who was the proper defendant in an election contest. *Id.* at 835–36. The *Beatty* court then asserted that the declaration of whether a candidate has been elected, or whether a question has received the required majority, should be done by the political subdivision or special district submitting the question. *Id.* at 836. Despite the language of *Beatty,* this court finds it odd to say the least that the entity interested in the outcome of an election should also have the power to declare the ultimate result. This seems analogous to allowing city council members to decide if they had received the number of votes necessary to remain in office, a procedure no one would champion. An entity, be it a city or a special district, should not have ultimate authority to decide the outcome of an election in which it has a special interest; there is absolutely no authority in the letter or spirit of the Missouri election laws for such a procedure. In fact, such authority would lead to the exact dilemma as in the case at bar, by taking election issues out of the hands of the neutral election authority, placing it beyond the reach of public scrutiny, and allowing for a legislative body to *sua sponte* change the result of the elec-

tion outside the election contest parameters. Such authority by a city council or the managing board of a special district would contravene the two major goals of election law: fairness and finality. Both are provided for by notice of elections, election authorities, and the exacting time limits of the election contest rules, and both censure the "fox in the chickencoop" behavior of the City of Lexington in this case. The state legislature should certainly look into clearing up this disorder.

## II. Validity of the 1986 Sewer Rate

The Defendants' other primary point is that the City failed to give proper statutory notice prior to imposing a city sewer rate. The court agrees, yet for the reasons below, the judgment of the trial court is affirmed.

The applicable Missouri statute is § 250.-233, RSMo 1986, which states that any city, prior to establishing sewer charges, shall hold public hearings and "at least thirty days' notice shall be given thereof." It is tacitly conceded that no formal public notice was given of the meetings at which the sewer rates were discussed. However, the City maintains that the statute does not require any particular type of notice, that the time of the meetings was publicized in the local media, and finally that the Defendants had actual knowledge of the meetings and so may not complain.

■ The court agrees that the § 250.233 is not clear as to what is required by "notice." A survey of over thirty statutes requiring notice of public meetings by municipal entities revealed only two which did not spell out the manner of notice.[8] A typical notice requirement is that in § 71.-012.2(1) addressing annexation: "[T]he hearing shall be held not less than seven days after notice of the hearing is published in newspapers of general circulation qualified to publish legal matters." For the education and information of the citizens of a city, § 250.233 must contemplate a certain type of notice, in order to give

---

**8.** These two are § 226.797 (regarding approval/disapproval of scenic highway status), and § 250.233, RSMo 1986. Section 249.645, regarding establishing sewer charges by a sewer *district,* also contains a non-specific notice provision.

citizens the time and information to organize both support and opposition to actions by city government. The statute is clear and unequivocal as to the City of Lexington's duty, though the where, how, and what are left unsaid. The court holds that this duty is to provide public notice, and until the legislature acts, the court fails to see how the public notice in § 250.233 means anything other than the traditionally accepted procedures of publishing legal notices in a newspaper of general circulation. The City also argues that the news articles provided notice. But § 250.233 is mandatory ("shall") and is directed to the city, not to local media or other inhabitants. The Missouri Supreme Court case of *State ex rel. City of Berkeley v. Holmes*, 358 Mo. 1237, 219 S.W.2d 650, 652 (Mo. banc 1949), when deciding the efficacy of a general news article as substitute for one of three required notices before a special election, stated that "information gained about a proposed special election by voters, from unofficial or informal sources, cannot dispense with an official notice required by law." Although *Holmes* spoke of notice in the election arena, the principle remains that the city alone must strictly comply with the requirements of public notice. The court holds that the attention of the local media does not substitute for the type of notice contemplated by § 250.233. To declare otherwise would encourage just the sort of laxness and indifference to the rights of citizens by city government that public notice is designed to prevent.

■ The City did not comply with the statutory notice required, yet in this case, under these facts, the court will not declare the sewer charge ordinance invalid. The Defendants argue the invalidity of the ordinance nearly four years after the imposi-

tion of the sewer charge, and have accepted the benefit of the ordinance throughout the entire time period. It must be conceded that the City did not see fit to include a count in *quantum meruit*. Authority does exist for denying redress to one who has accepted the benefit of a city ordinance, *Ewing v. City of Springfield*, 449 S.W.2d 681, 688 (Mo.App.1970) (denial of a constitutional attack on a zoning ordinance after the landowner proceeded under the ordinance and "accepted benefits thereunder"). Most importantly, the Defendants in this case had actual notice, that is, actual knowledge, *Lamke v. Lynn*, 680 S.W.2d 285, 288–89 (Mo.App.1984), of the public meetings regarding the sewer charge, and in fact attended the meetings. Generally, actual knowledge prevents a litigant from complaining of lack of notice through the required statutory procedure, *Macon–Atlanta State Bank v. Gall*, 666 S.W.2d 934, 940 (Mo.App.1984). Further, a litigant without statutory notice must show prejudice by the "failure to follow the technical requirements." *Id.* Yet the City can point to no cases, nor has the court's research unearthed any, where actual knowledge has been held to substitute for formal, public notice in this type of governmental action situation.[9] In fact, Missouri courts have strictly construed election notice requirements, *see State ex rel. Stokes Mound School Dist. v. Colliver*, 243 S.W.2d 344, 350 (Mo.1951), *American Legion Post v. City of Malden*, 330 S.W.2d 189, 192 (Mo.App.1959), and have definitely held that actual, informal notice of an election will not substitute for statutory notice, *see State ex rel. City of Berkeley v. Holmes*, 219 S.W.2d at 652. Still, here is a case where the public is not the decision-maker, as in an election, but only has a right to be heard by the decision-maker.

9. The City cites cases addressing notice in the context of actual knowledge by individuals where actual, personal notice was required: *Macon–Atlanta State Bank v. Gall*, 666 S.W.2d 934, 940 (Mo.App.1984) (defendant had knowledge of foreclosure sale, discussed with attorney, and no showing of prejudice); *Larabee v. Washington*, 793 S.W.2d 357 (Mo.App.1990) (prejudgment interest settlement offer statute required notice by certified mail; appellant received and acted upon notice); *Baker v. Baker*,

274 S.W.2d 322, 325–26 (Mo.App.1954) (common law requirement of reasonable notice in context of modification of divorce decree where no statutory notice required, phone call one hour prior to hearing upheld); *State ex rel. Gleason v. Rickhoff*, 541 S.W.2d 47, 50 (Mo.App. 1976) (company officers knew of receiver's intention to take custody of property, no prejudice in court's shortening of actual notice time from five days to one day).

Therefore, in the case at bar, where there exists actual knowledge and attendance at the critical public meeting, as well as lengthy disregard of mounting sewer use charges, the court will not allow an attack on the City's ordinance by these Defendants. This point on appeal is denied. The court notes that it is the City's absolute duty to provide thirty days public notice of a public hearing under § 250.233, and without such notice, the City runs the risk of those without actual notice having the legal right to challenge the sewer charge ordinance.

### III. The Hancock Amendment

■ The Defendants' next point states the imposition of the sewer use charge violated the Hancock Amendment, Mo. Const. Art. X, § 22, which enjoined a tax levy or fee, without a vote of the people, greater than that authorized on November 4, 1980. *Roberts v. McNary*, 636 S.W.2d 332, 336 (Mo. banc 1982); *Loving v. City of St. Joseph*, 753 S.W.2d 49, 51 (Mo.App. 1988). The scenario of events pertinent to this point is as follows:

| | |
|---|---|
| August 5, 1980 | Election |
| November 4, 1980 | Hancock adopted |
| January 19, 1981 | Council adopts ordinance declaring voter approval |
| December 9, 1985 | Revenue bonds authorized |
| January 14, 1986 | Ordinance for sewer use charges |

Part (b) of § 22 of Art. X states the limitations in the amendment do not apply to "taxes imposed for the payment of principal and interest on bonds ... authorized prior to the effective date of this section." *Oswald v. City of Blue Springs*, 635 S.W.2d 332, 333–34 (Mo. banc 1982), has extended the exception to allow for increased revenues to pay for the costs of maintenance and operation. In *Tannenbaum v. City of Richmond Heights*, 704 S.W.2d 227, 228–29 (Mo. banc 1986), bonds had been approved by the voters in 1975, but the city continued making payments on them out of general revenue until 1983, when the city by ordinance imposed a debt service tax. The court upheld the city action saying the city's power to impose a levy had already been granted by the people in the 1975 election. *Id.* at 229. The court here holds that, given a continued legitimacy of the August 5, 1980, vote in Lexington authorizing issuance of the bonds, and the power of the City to provide for payment on the bonds; the point is ruled against Defendants.

### IV. Monthly Interest on Sewer Bills

■ In Defendants' last point, they assert the trial court erred in allowing the city to collect 1% per month interest on the unpaid sewer accounts. The Defendants contend § 408.020, RSMo 1986, controls. That statute allows creditors nine percent per annum "when no other rate is agreed upon ..." Section 250.234 proclaims unpaid and delinquent sewer charges "shall bear interest ... until paid."

Here, the city adopted an ordinance with the one per cent a month delinquency charge specified, so the nine percent rate would not apply. *Cf. Henty Const. Co., Inc. v. Hall*, 783 S.W.2d 412, 417 (Mo.App. 1989). The point is denied.

### V. City's Cross–Appeal

■ Finally, given the meritorious nature of the Defendants' points on appeal, the court denies the City's cross-appeal for attorney's fees. True, § 250.140, RSMo 1986, does give a city the "power to sue" to recover unpaid sewer charges in a civil action, "plus a reasonable attorney's fee to be fixed by the court." The statute does not mandate attorney's fees to a city successful in the collection of charges, however. That being the case, the granting or refusal to grant attorney's fees by the trial judge is primarily discretionary and will not be disturbed absent the showing of an abuse of discretion, *Kenny's Tile & Floor Covering, Inc. v. Curry*, 681 S.W.2d 461, 466 (Mo.App.1984), *Burton v. Burton*, 475 S.W.2d 623, 624 (Mo.App.1971). The issues presented by the Defendants resulted in a close case, and the trial court was guilty of no abuse in this portion of the judgment. The City's point on cross-appeal is denied.

### Conclusion

In conclusion, the court affirms the trial court and its determination that the Defen-

dants must pay for their sewer service, and further affirms the denial of attorney's fees to the City. The court points out, however, the serious nature of the City's disregard of simple public notice procedure, as well as the confusion and errors surrounding the 1980 bond election. The court further suggests that Missouri city governments, to avoid the consequences of equitable attacks upon city elections, be more faithful to the letter of the law concerning such elections.

TABLE 1

| Chapter 115 statutory requirements | Election activities of City of Lexington |
|---|---|
| 1. "Election authority" to conduct all elections, § 115.023.1; county clerk is the election authority, § 115.015. | 1. Lafayette County clerk conducted the sewer bond election for the City of Lexington, on 8/5/80. |
| 2. Election authority shall convene a verification board to a) verify the count and b) certify the results of the election, § 115.497. | 2. Unknown if Lafayette county clerk convened "verification board," and results were not in any way "certified." |
| 3. The verification board shall<br>(a) certify the returns to [the city] submitting a question at the election, § 115.507.<br>(b) issue a statement announcing the results of each election, § 115.507. | 3. Lafeyette county clerk<br>(a) certified the returns to the City of Lexington on 8/11/80<br>(b) but made no statement announcing the results; <u>instead</u><br>(c) City ordinance gives Council authority to declare the result of an election and on 8/12/80, Council passes 1st ordinance stating sewer bond issue failed for lack of 4/7 majority. |
| 4. Result of proposition election may be contested, officer or election authority responsible for issuing statement of election result is contestee, § 115.553; 30 day time limit, § 115.577. | 4. No election contest was filed within the 30 days following 8/11/80 (returns certified), or following 8/12/80 (City ordinance gives result as "failed"). |
| 5. Entity that verifies the returns, announces the results, or issues a certificate of election, may not reconvene on its own motion to change its prior statements, (common law). | 5. Council passes 2nd ordinance on 1/19/81, which a) repeals 1st ordinance, b) states the vote, and c) states that the sewer bond election passed with a simple majority. |
| 6. Thirty day election contest limit following announcement of result, § 115.577. | 6. No election contest filed within 30 days following 1/19/81 (ordinance gives result as "passed"). |