14748

PHILLIPS v. CITY OF ROCK HILL ET AL.

(198 S. E., 604)

*Mr. L. S. Dickert,* for petitioner,

*Messrs. Nathans & Sinkler, Spencer & Spencer* and *B. J. White,* for respondents,

September 12, 1938.

*Per curiam.*

The City of Rock Hill has sold and seeks to issue $60,000-.00 of waterworks improvement bonds. The bonds are general obligations of that city and are issued to provide funds with which to build a storage plant for water to be connected with the city's existing waterworks system.

The purpose of this action is to enjoin the issuance of the bonds. It is heard by special permission in the original jurisdiction and was submitted upon an agreed case containing the facts upon which the controversy depends. The petitioner is a resident taxpayer of Rock Hill whose property would be subjected to the tax levy ordered to meet the payment of the principal and interest of these bonds.

On the 16th day of May, 1938, there was presented to the city council of Rock Hill a petition requesting that body to order an election on the question of the issuance by the City of Rock Hill of not exceeding $75,000.00 of bonds for the purpose of paying for the purchase of necessary property and for the establishment and construction of an underground and elevated storage plant for water to be connected with the city's existing waterworks system, which petition, upon examination, was found to contain the signatures of more than half of the freeholders of said city as shown by its tax books.

In pursuance with that petition and the applicable provisions of law the city council met and adopted a resolution providing for a special election to be held on the question thus presented. The resolution provided, among other things, that the books of registration be opened not later than the 25th of May, 1938, and should remain open until the 18th day of June, on which day they would be closed until the election, which was set for June 30th, 1938. The resolution also provided that, " * * * due and legal notice of the election is directed to be published in *The Evening Herald* once a week for four (4) consecutive weeks before the election, the first publication to be not later than the 2nd day of June, 1938."

In pursuance with the provisions of the resolution the books of registration were opened by the supervisor of registration for Rock Hill on the 25th day of May, 1938, and remained open until the 18th day of June, on which day they were closed. However, through some mistake, which does not appear to be the fault of the city officials, the notice

of the election was not published as provided in the resolution, that is to say, for four (4) consecutive weeks, but was published only in the issues of *The Evening Herald* published in the City of Rock Hill, appearing May 28, June 4 and June 11. It will be seen that no formal notice was published within 15 days of the election as contemplated by the provisions of Section 7327 of the Code, although the agreed statement of facts shows news items containing full information concerning the election were published on June 27 and June 29, 1938. The election was held on the 30th day of June, 1938, and resulted in favor of the issuance of bonds by a vote of 165 to 5.

The petitioner contends that because of the failure to effect a literal compliance with the provisions of Section 7327 the election was a nullity and consequently city council does not have the right to issue the bonds. He also contends that the books of registration were not opened and closed in conformity with the provisions of Section 2288. That by reason of this some 1,134 persons were illegally registered; that none of these should have been permitted to vote, and that since the votes of persons in this category were sufficient in number to have changed the result of the election, no valid election has been held.

At the outset it is to be observed that no city or town of this State may incur any bonded debt unless the question as to the creation thereof be submitted to the qualified electors of such city or town at a special election. It is also patent that the right of suffrage is dependent upon compliance with the provisions of law relating to registration. Article 8, Section 7, of the Constitution. Accordingly, if the contentions of the petitioner are correct and the election held should be declared a nullity for either reason then the prayer of the petition must be granted. We shall undertake a disposition of the two questions involved in this case in the order stated in the petition.

Is the election a nullity for the reason that the notice given therefor fails to comply with the applicable provisions

of law relating to special elections? Or, put otherwise, has there been a compliance with the provisions of Section 7327?

It is conceded that if the resolutions adopted by the city council of Rock Hill, directing that the notice be published in four (4) consecutive weeks, had been followed there would have been a literal compliance with the provisions of this section. However, the intentions of city council cannot govern, but on the contrary the actual notice that has been given.

At the outset of this discussion, we wish to make plain the principle of law relative to the notice required to be given of elections. A clear statement of this rule is to be found in the opinion of Mr. Justice Woods in *Croxton v. Truesdel,* 75 S. C., 418, 56 S. E., 45. We quote from that opinion: "The rule as to general elections held on days fixed by law is that a statute requiring public notice of time and place is to be regarded as directory and not mandatory, for the reason that the law providing for the time and place is presumably known to all without special notice. But, when the election is special, and the time and place are not fixed by law, but are to be fixed by some authority named in the statute, those interested are warranted in depending for information entirely on the special notice; and hence the general rule is the notice must be given as required by statute. 15 Cyc., 322; McCreary on Elections, 138; 90 Am. St. Rep., 70, 71; *People v. Bates,* 83 Am. Dec., 750; *People v. Weller* [11 Cal. 49], 70 Am. Dec. 754."

It is, therefore, our opinion that where special elections are held there must be a substantial compliance with the pertinent provisions of law thereunto relating. With this in mind, it is fitting that we make a close scrutiny of the applicable statute. Section 7327, Volume 3, Code of Laws of S. C., provides that: " * * * in submitting to the qualified electors of any city or town the question of incurring a bonded indebtedness, notice of the election *shall be deemed sufficiently given* if there be published twice in a newspaper printed in such city or town,

once at least twenty (20) days before the election and once within the period of fifteen (15) days before the election a notice stating the day of election and the amount or maximum amount and the purpose or purposes of the bonds proposed to be issued."

We have italicized what seems to us to be the decisive phrase in this text. It must be observed that the statute does not provide an exclusive method of the giving of such notice. It does not state that the notice of the election shall be given in this or in that manner, but on the contrary very clearly states that notice given in the manner set forth in the statute shall be deemed sufficient. The statute here does not lay down a specific mandate but on the contrary merely directs the manner in which notice could be given. It is directory and not mandatory and any method of giving notice of the election which could reasonably be held to have served the purpose for which the notice was intended would likewise, as a matter of law, be held sufficient with the limitation, of course, that the manner, method and time would not be such as to affect the fairness of the election. But here the notice was actually given in three publications of a newspaper having wide circulation in the City of Rock Hill, which was once more than the number of times provided in the statute. While the last notice was not published within the 15-day period mentioned therein it was published so close to this time that no one could have been misled; and in addition thereto the news items to which reference has hereinbefore been made. We are of the opinion that the publication of the notice and the news items which were published at the instance of the city officials has substantially complied with the intention of the statute and that for the purposes of the election, good and sufficient notice was given to all qualified electors of the City of Rock Hill. An examination shows that the authorities support the view that substantial compliance with the provisions of such a statute is sufficient.

"The test for determining whether an election is invalidated for want of a notice prescribed by statute is whether

* * * the voters have had knowledge of the election and full opportunity to express their will." 20 C. J., 96, Section 84.

" * * * A compliance with the spirit and purpose of the law in such manner as to afford the public an opportunity to know when and where the election was to be held and the object of the same is all that is necessary." McQuillin on Municipal Corporations, Volume 5, page 1003.

The next question presented in the petition has to do with the method of registration of municipal voters.

The applicable statute appears as Section 2288 of the Code. The pertinent portions of that Section read as follows:

"§ 2288. *Registration for Municipal Elections.*—Ninety days before the holding of a regular election in any incorporated city or town in this State the mayor or intendant thereof shall appoint one discreet individual who is a qualified elector of such municipality, as supervisor of registration for such city or town, who shall hold office for the term of two years and until his successor has been appointed and qualified, and who shall receive as compensation for his services one dollar per day for each day actually engaged in the discharge of his duties, to be paid by the town or city, whose duty it shall be to register all qualified electors within the limit of the incorporated city or town. The names of all qualified electors of such municipality shall be entered in a book of registration, which at least one week before the election, and immediately after the holding of the election, shall be filed in the office of the clerk or recorder of such city or town, and shall be a public record open to the inspection of any citizen at all times: Provided, That twenty days prior to any special election to be held as aforesaid the books of registration shall be opened for the registration of the names of qualified electors therein, and shall remain open for a period of ten days * * * ."

This statute has been before this Court on several occasions, and, as pointed out in *Logan v. Stanley,* 95 S. C.,

22, 78 S. E., 524, its meaning is obscure. This Court has twice had occasion to say that a failure to comply with the provisions of the statute requiring the opening of books of registration 20 days before an election and the closing 10 days prior thereto did not invalidate an election. The cases to which we refer are *Bethea v. Town of Dillon,* 91 S. C., 413, 74 S. E., 983, and *Clinkscales v. Fant,* 116 S. C., 206, 107 S. E., 515. In the *Bethea case* the books of registration were opened 25 days prior to the election, kept open for a period of 10 days and closed 15 days before the election. In the *Fant case* they were opened 28 days before the election, kept open for 10 days and closed 18 days prior to the election. In holding that this variance was not in itself sufficient to invalidate the election the Court said in the *Bethea case* (page 984) : "While it is always better to comply literally with statutory requirements still the slight variance in this case cannot be held to have vitiated the election, because it has not been made to appear that it affected the result."

This language was quoted with approval in the *Clinkscales case.* The effect of these holdings is to interpret the provisions of the statute as being directory as distinguished from mandatory, but in each of those cases the Court was careful to point out that it did not appear that the results of the election were changed by the method adopted for the opening and closing of the books of registration.

In this case the books of registration were opened May 25th, 35 days prior to the election held June 30th, and closed on June 18th. To effect a literal compliance with the provisions of the statute they should have been opened on June 10th and kept open through June 19th, and then closed. Unquestionably, citizens of Rock Hill qualified to register had the right to register on any day within that period, but it appears in the agreed case that no persons offered for or were refused registration on June 19th. Consequently, we are only called upon to decide whether it was permissible for persons to be registered within the period beginning May

25th and June 8th. It will be seen that a sufficient number of persons registered within that period to change the result of the election and if it be held that those persons who were permitted to register within that period were improperly registered then the election must be declared invalid. A careful reading of the statute shows that the General Assembly made it incumbent upon the officials of an incorporated city or town to provide for registration and required that a supervisor of registration be appointed, " * * * whose duty it shall be to register all qualified electors within the limit of the incorporated city or town."

It seems to us that this language must be controlling. Certainly the General Assembly wished to make the right of suffrage as simple as possible. To adopt any other view would place restrictions upon the right of suffrage which we do not think the General Assembly intended. Certainly, the framers of the Constitution were careful to provide that no bonded debt might be incurred without an opportunity first being given to those qualified to vote to express their approval or disapproval. The purpose of this provision must mean that all who had an interest in so vital an affair of the city should be allowed an opportunity to vote. Any construction of the statute involved, other than the one given by us, would limit this right. Accordingly, we hold those persons registered within the period were properly registered. The view we have taken of these matters requires that the petition be dismissed, and it is so ordered.

Mr. Chief Justice Stabler and Messrs. Justices Bonham, Baker, and Fishburne concur.

Mr. Justice Carter did not participate on account of illness.