123 So.2d 316 (1960)
SPECIAL TAX SCHOOL DISTRICT NO. 1 OF DUVAL COUNTY, Florida, et al., Appellants,
v.
STATE of Florida et al., Appellees.
Supreme Court of Florida.
September 28, 1960.
*317 Elliott Adams and McCarthy, Lane & Adams, Jacksonville, for appellants.
William A. Hallowes, III, William D. Barfield, Jacksonville, and J. Lewis Hall of *318 Hall, Hartwell & Douglass, Tallahassee, for appellees.
DREW, Justice.
This appeal[1] comes directly to this Court to review a final decree of the Circuit Court of Duval County declining to validate $35,000,000 of bonds of Special Tax School District No. 1 of Duval County.[2] The validation of the bonds was opposed in the trial court by the State and two intervening taxpayers, respondents in this appellate proceeding.
The learned circuit judge declined to validate the bonds and dismissed the petition because of his conclusion that the proceedings leading up to and including the election were so infected with gross and substantial irregularities and failures to comply with mandatory provisions of the law that the reregistration of voters and the election were invalid and void. The principle points discussed in the opinion of the circuit judge and relied upon by him to support his decree which we deem necessary to discuss and dispose of in this opinion are as follows:
1. The failure to publish the notice requiring reregistration of voters once each week for four consecutive weeks as required by the applicable statute;[3]
2. The failure to keep the registration books open for a full thirty days and to close said registration books at least fourteen days prior to the holding of the election;[4] and
3. Allowing qualified electors who were freeholders (other than those who attained the status of freeholder after the closing of the registration books and prior to the election) to participate in such bond election without including in the list of qualified electors who were freeholders entitled to participate all of such qualified electors whose names appeared on the permanent registration books of said district.
Appellees here urge upon us the validity of each reason assigned by the circuit judge in declining to validate said bonds and, in addition thereto, argue that the reregistration statute,[5] for numerous reasons outlined in their briefs and ably presented in oral argument, is unconstitutional and invalid.
We preface the discussion of the above propositions by a brief recital of the events which transpired in calling and conducting the election as background and for a clear understanding of the various points presented on this appeal.
As required by the reregistration statute, the Board of Public Instruction, Duval County, determined the necessity for the issuance of the subject bonds, and called an election for December 22, 1959 for the purpose of submitting such question to the qualified electors of the district who were freeholders. At the same time the Board requested the Board of County Commissioners of Duval County to call for a reregistration of the qualified electors of said tax district who were *319 freeholders residing therein for the purpose of securing a new and up-to-date list of freeholders to be used in conducting said election.[6] Such request was granted and notice thereof was published in the Jacksonville Journal in its issue of October 26, 1959. The published notice provided that the registration books would be open for the purpose of reregistration from Sunday the 8th day of November, 1959 to and including Tuesday the 8th day of December, 1959 and would thereafter be closed until the day of said election.[7] For the purpose of understanding the issue involved in the publication of this notice, we emphasize the fact that a copy of such formal notice was published in only one issue of the newspaper. For the purpose of discussing a corollary or subsidiary issue, not raised or discussed by the parties directly but inherent in the arguments on the invalidity of the reregistration statutes, it should also be pointed out that the notice required all of the qualified electors of the district to register in the office of the Supervisor of Registration in the court house in the City of Jacksonville, Florida, between the hours of 9:00 o'clock a.m. and 5:00 o'clock p.m. of each day except Sundays.[8] On the date of the adoption of this resolution calling for a reregistration, there were approximately 94,000 qualified freeholders on the permanent registration records of the district.[9]
26,925 freeholders reregistered during the time the books remained open. At the election the total votes cast were 27,464 of which number 18,723 voted in favor of the bonds and 8,741 voted against. On the day of the election 6,190 persons who did not appear on the list of reregistered voters, but who qualified pursuant to the provisions of Section 100.241 (2) (d),[10] Florida Statutes, F.S.A. appeared at the polls, were determined by the election officials to be qualified electors on the permanent registration records,[11] made an affidavit of ownership of real property or presented a tax receipt showing payment of taxes on real property or presented a deed or certified copy thereof in his name as required by the aforesaid statute and were allowed to vote in the election. The record does not disclose whether all or any of these 6,190 voters appeared on the permanent registration records as freeholders. The record, of course, does not show *320 whether these individuals voted for or against the issue of bonds. The total number voting under this provision of the law, however, was used in determining the total number of freeholders who were qualified to participate in said election, that is to say, following the election, the Supervisor of Registration added 6,190 to his list of 26,925 who had reregistered and certified that the total thereof viz., 33,115 was the number of qualified electors who were freeholders entitled to participate in the election.[12]
Following the election the results were duly canvassed and resolutions were adopted declaring that a majority of the qualified electors of said district who were freeholders participated in said election and that a majority of those voted in favor of the issuance of said bonds, and that, therefore, the results of said election were such as to authorize the board to issue and sell said bonds.
We direct our attention first to the contention of respondents that the reregistration statute is unconstitutional and invalid.
We have carefully considered the argument on this point in the light of the previous holdings of this Court in the Sarasota[13] and Escambia[14] County cases and the effort to distinguish these cases from the one now under consideration. No useful purpose would be served by an extended discussion of our holding in both of the cited cases. We will, however, briefly observe that, insofar as the question of the constitutionality of the reregistration statute is concerned, the rationale of the Sarasota case is decisive. We pointed out there the reasons for our conclusion that the reregistration statute there under discussion was valid and constitutional.[15] The same reasons are *321 clearly applicable to the present general reregistration statutes. If any doubt remained at all that this decision was decisive, particularly in the light of the argument that the general law requiring permanent registration (now in effect) altered our conclusion,[16] that argument is set at rest by our holding in the Escambia County[17] case. In this latter case the question here argued by respondents, in all of its material aspects, was presented, discussed and decided contrary to respondents' contention. The argument that our interpretation of these several statutes in the Escambia County case did violence to the legislative intent is not appealing to this Court. After the Sarasota and Escambia cases were decided, the Legislature had several opportunities to clear up the situation if it felt we had misinterpreted their legislation. It did not do so. In fact in the 1959 session, it extended the reregistration provision of the general law to include the various municipalities of this State, thereby making the reregistration provisions, by general law, applicable to the source of probably the greatest amount of public securities.[18]
The Legislature has the undisputed power, of course, to repeal the reregistration statutes and to provide that the permanent registration records shall be used exclusively in determining the number of qualified electors who are freeholders entitled to participate in a bond election.[18(a)] Although the system of permanent registration in varying forms has been on the books for many years, the Legislature has not seen fit to enact this requirement.
To summarize our views and to set at rest the question of the procedure which, in our judgment, the present laws require in conducting a bond election under the reregistration and related statutes, we reaffirm our views and judgments in the Sarasota and Escambia County cases and hold: (1) that the reregistration statute in bond elections herein discussed is a valid and constitutional enactment; (2) that when a reregistration has been called in accordance with the statute and conducted in accordance with the statute as we have here and in the prior cases construed it, the total number of persons so reregistered added to those who appear at the polls and qualify under the provisions of Section 100.241(2) (d), Florida Statutes, F.S.A., supra, as we interpret it here, shall be deemed to be the number of qualified electors who are freeholders residing in said tax district, county or municipality, and that a majority of such voters are required to authorize the issuance of the bonds which are the subject of said election. We do not interpret the law to require a voter appearing at the polls on election day under the above quoted statute to establish his freeholder status as having occurred between the close of the reregistration books and the date of the election *322 and reverse that portion of the questioned decree so holding.[19]
Concerning the question of whether there was a compliance with the provision of the law relating to the publication of the notice of reregistration, we have heretofore pointed out that such notice was published in the form of a legal advertisement in only one issue of the newspaper whereas the statute requires that said notice be published once each week for four consecutive weeks. Petitioners' argument that the wide-spread publicity appearing in the press and on television and radio during each day from prior to the date of the first publication of this notice to and including the date of the election constituted a substantial compliance with the requirement of the statute cannot be sustained. Nor do we believe that any extended discussion of such nebulous argument is necessary to justify this conclusion. Special elections, and particularly those which might result in requiring the exercise of the power of taxation, must be conducted in substantial compliance with constitutional and statutory requirements. Newspaper articles or comments or publicity by television or radio cannot lawfully substitute for the mandatory requirements of the law.[20] The power to prescribe what shall constitute reasonable notice of an election, reregistration or other procedures is a legislative one. When it does so in elections of this kind, the requirements must be substantially complied with. One publication of the notice cannot conceivably be construed to be a substantial compliance with a statute which requires such notice to be published once each week for four consecutive weeks. Such requirement, being a condition precedent to an effective election, clearly supports the conclusion of the trial judge that this fatality vitiated the entire election.
We also agree with the trial judge that the requirement of the statute that the registration books shall be kept open for at least thirty days is not complied with when Sundays or holidays are included within the thirty day period.[21] *323 Such statute must be construed in favor of the voter and this requires the conclusion that the intention of the Legislature was that the electors of any county, municipality or tax district should have thirty full days within which to reregister under this statute. We pointed out specifically in the Sarasota case that the machinery set up for reregistration must afford a reasonable opportunity to the citizens to register.[22] While the Legislature has provided a period of thirty days to accomplish such purpose and made such provisions applicable to large and small counties, municipalities and tax districts alike, we deem it appropriate to observe here that in a county the size of Duval the requirement that over 94,000 persons otherwise qualified shall reregister in one office in one building in thirty days between 9:00 o'clock a.m. and 5:00 o'clock p.m. may not satisfy the requirement that a reasonable period be afforded the citizens to reregister. To satisfy such requirement in a populous county may well require that many places be provided throughout the affected area for the voter to reregister. While the question is not directly presented here, nor is it necessary for us to decide it in disposing of this case, we again reemphasize our holding in the Sarasota case that the machinery set up for reregistration must afford a reasonable opportunity to every qualified citizen to reregister. Whether this provision of the law has been complied with is, when questioned in an appropriate manner, a factual matter and a proper subject of judicial inquiry.
We are also of the view that Sundays and legal holidays may not be included within "the fourteen days prior to the holding of any bond election" required by the same statute.[23] Such fourteen day period must be exclusive of such days.
For the many reasons herein discussed and, subject to the qualifications herein mentioned, the decree appealed from is
Affirmed.
THOMAS, C.J., and TERRELL, ROBERTS and O'CONNELL, JJ., and WIGGINTON, District Judge, concur.
HOBSON, J., not participating.
NOTES
[1] A direct appeal comes to us under Article V, Section 4(2), Florida Constitution, F.S.A., authorizing direct appeals to this Court "from final judgments or decrees in proceedings for the validation of bonds * * *."
[2] Proceedings in the trial court were brought under Chapter 75, Florida Statutes 1959, F.S.A.
[3] Section 97.081, Florida Statutes, F.S.A. Cf. Chapter 59-158, Laws of Florida, Acts of 1959, which extends application of this chapter to municipal bonds elections. The applicable language is "shall publish the calling of such reregistration in a newspaper of general circulation once each week for four consecutive weeks stating the purpose and use of such reregistration."
[4] Ibid. note 3. The exact language of section 97.081(5), Florida Statutes, F.S.A., is that the registration books "shall be kept open for at least thirty days and closed at least fourteen days prior to the holding of any bond election * * *."
[5] Ibid. note 3.
[6] Section 97.081(2) (b), Florida Statutes, F.S.A.
[7] Ibid. note 4. It appears that, during this thirty day period calculated by not counting the first but counting the last day, there were four Sundays.
[8] The language of the published notice was "the said books will be open during said period from 9:00 o'clock a.m. to 5:00 o'clock p.m. each day in the week except Sundays."
[9] The permanent registration system provided for in Chapter 98, Florida Statutes, F.S.A., became effective in Duval County January 1, 1956 and such permanent registration system was in effect in said county throughout the entire proceedings which occurred in conducting this bond election.
[10] "(d) Any registered elector who is not shown as a freeholder, but who presents to the inspectors a tax receipt showing a payment of taxes on property in his name or a deed or certified copy thereof of property in his name, or makes a sworn affidavit of ownership giving either a legal description, address or location of the property in his name shall be entitled to vote in the election and shall be considered a freeholder.

"The number of persons qualifying in this manner shall be added to the number shown on the certificate of the supervisor in determining the number of persons qualified as freeholders."
[11] The record shows that all of the permanent registration records were at the polls on the day of the election and that such permanent registration records were consulted by the election officials for the purpose of determining whether a person presenting himself to vote but whose name did not appear on the reregistration list furnished by the supervisor was a qualified elector. No inquiry was made to determine whether he appeared on such permanent registration record as a freeholder or as a non-freeholder.
[12] The supervisor of registration filed his certificate with the district certifying that on the day of said election there were 33,115 qualified electors who were freeholders and entitled to participate therein. In the resolution of the district canvassing the returns of said election and declaring the results thereof, appearing in the minutes of said board, there was a finding that a majority of the freeholders qualified to vote did participate in said election and that of those participating a majority voted in favor of the issuance of said bonds. Sections 100.281 and 100.291, Florida Statutes, F.S.A.
[13] State v. County of Sarasota, Fla. 1953, 62 So.2d 708.
[14] State v. Board of Public Instruction, Fla. 1959, 113 So.2d 368.
[15] Pertinent language of State v. County of Sarasota is to be found 62 So.2d at page 711, as follows:

"The Legislature has long recognized the necessity for up-to-date registration records by the enactment of many laws requiring or authorizing re-registration of voters in the various political subdivisions of the State. It is common knowledge that old, out-moded registration records are impediments to orderly elections, and the trend of legislalation is toward constantly up-to-date registration records. The Florida Legislature has adopted several Acts providing for re-registration at regular intervals. As example of such legislation see Chapter 15629, Acts 1931; Chapter 22173, Acts of 1943, and Chapter 22717, Acts of 1945. Such Acts are a substantial contribution to good government and orderly elections. We find nothing in the organic law of this State which prohibits periodic re-registration of voters as a prerequisite to participation in elections, so long as the machinery set up for such re-registration affords a reasonable opportunity to the citizens to register. We think periodic registration greatly facilitates a correct determination of the number of freeholders entitled to participate in a bond election. This is the best method yet devised to remove from the records those who have died or those who are no longer qualified to vote and to add to the records those who by virtue of attaining voting age (or, in the case of bond elections, have become freeholders) are qualified. In the adoption of Section 6 of Article IX the people determined that at least one more than half of the qualified electors who were freeholders at the time of the election should participate therein to make it a valid election. To hold that re-registrations could not be required from time to time would be to frustrate the very intent of the plain language of the amendment. * * *"
[16] Section 98.041, Florida Statutes, F.S.A., contains the following enlightening language:

"* * * and electors registered shall not thereafter be required to register or re-register except * * * as provided for the registration of freeholders."
[17] The pertinent language from the opinion is as follows:

"We therefore conclude that the re-registration of the freeholder electors was valid and that the number of freeholders entitled to vote on the issuance of the bonds in question was the number of such electors who re-registered as supplemented by those permitted to vote under the provisions of Sec. 100.241 (2) (d), supra. See State v. County of Sarasota, Fla. 1953, 62 So.2d 708. Inasmuch as a majority of those so qualified to vote on the issue participated in the election and a majority voted favorably, the bonds were properly validated." [113 So.2d 370.]
[18] Op. cit. note 3.
[18(a)] See Holmer v. State, 1947, 158 Fla. 397, 28 So.2d 586, holding a voter's qualification (as to his status as a freeholder) must be determined under the Constitution as of the date of the election.
[19] The language of the decree referred to is as follows:

"* * * If the reregistration statute had been complied with, the controlling figure would have been determined from the number shown on the reregistration records as supplemented by the number who qualified at the polls under the provisions of Chapter 100.241 (2) (d). The supplemental number would have consisted of those registered electors who were not shown as freeholders and who presented to the inspectors at the polls proof of ownership of land as provided in said section. State v. Board of Public Instruction of Escambia County (Fla.) 113 So.2d 368, text 371."
"* * * Also, after the expiration of the time fixed by the resolution of the Board of County Commissioners for the reregistration, the election was, in effect, opened to all of the 94,311 registered freeholder electors in the Special Tax School District who had not re-registered."
[20] City of Miami v. Romfh, 1913, 66 Fla. 280, 63 So. 440; Merrell v. City of St. Petersburg, 1926, 91 Fla. 858, 109 So. 315; Town of Mangonia Park v. Homan, Fla.App., 1960, 118 So.2d 585; State ex rel. City of Berkeley v. Holmes, 1949, 358 Mo. 1237, 219 S.W.2d 650; American Legion Phillips Post v. City of Malden, Mo. App. 1959, 330 S.W.2d 189; City of Olive Hill v. Howard, Ky. 1954, 273 S.W.2d 387; Ashcraft v. Estill County, Ky. 1956, 290 S.W.2d 31; Annotation 119 A.L.R. 661 et seq. These decisions relate primarily to notice of elections, publications of ordinances or resolutions or matters of that sort but the rationale and holding in the cases are clearly applicable to the constitutional or statutory requirements with reference to acts to be performed by public officials in connection with conducting such an election, including the subject proceedings with reference to reregistration of voters.
[21] "* * * In this connection the provision in the resolution that the books be opened November 8th (Sunday) was nullified by the requirement of the same resolution that they be closed on Sunday; and the provision that they remain open through December 8th was contrary to the statute that required them to be `closed at least fourteen days prior to the holding of any bond election.'"

The trial court used the following language with reference to the reregistration notice:
"* * * The books were not `kept open' at least thirty days and closed at least fourteen days `prior' to the holding of the election as required by law."
[22] Op. cit. note 15.
[23] Op. cit. note 21.