190 So.2d 271

**CITY OF BIRMINGHAM**

v.

**Morris N. BOULDIN et al.**

**6 Div. 254.**

Supreme Court of Alabama.

Aug. 25, 1966.

See also 280 Ala. 85, 190 So.2d 279.

J. M. Breckenridge, John S. Foster and W. W. Conwell, Birmingham, for appellant.

Irvine C. Porter and Jos. S. Mead, Birmingham, for appellee, cross-appellant City of Homewood.

Griffin & Wilson, Birmingham, for appellee Bouldin.

Jenkins, Cole, Callaway & Vance, Birmingham, for City of Vestavia Hills, amicus curiae.

MERRILL, Justice.

This is an appeal by the City of Birmingham from a decree nullifying an election of August 11, 1964, in the City of Homewood, whereat a majority voted for annexation of Homewood to Birmingham by a vote of 2,-423 to 2,417. The events leading up to the election and the filing of this suit are detailed fully in the opinion on first appeal in Bouldin v. City of Homewood, 277 Ala. 665, 174 So.2d 306, and will not be repeated here.

It is sufficient to say that Bouldin, a citizen of Homewood, filed a bill for injunction seeking to have the election set aside and held for naught. One of his contentions was that the statutory notice required by Section 3 of Act No. 663, Acts of Alabama 1961, p. 828, listed in the Pocket Parts as Tit. 37, § 34(22), was not given. Bouldin made the City of Homewood and the City of Birmingham parties respondent. Homewood filed a cross bill seeking a declaration of rights and also asking that the election be set aside. Thus, Birmingham was in the position of trying to uphold the election, while Bouldin and Homewood were trying to have it set aside.

The trial court denied the relief sought in Bouldin's bill and Homewood's cross bill and each appealed. This court reversed the decree of the trial court and remanded the cause.

We thought that by holding that since the necessary statutory notice was not given and the election was therefore void, that the controversy would be ended, but Birmingham insisted on presenting and asserting its affirmative defenses, as it had a right to do, and we so stated in our answer to the application for rehearing, 277 Ala. 665, 174 So.2d 306.

On July 15, the trial court entered a "Decree on Pre-trial," the pertinent parts of which reads:

"Upon hearing, in Open Court, of Pre-trial, on June 14, 1965, and upon this date, for the purpose of argument by Counsel and submission to the Court of the proposed issues to be considered upon oral hearing of this cause at a later date; and for an explicit delineation of

the issues to be considered at said oral hearing;

"It is CONSIDERED, ORDERED, ADJUDGED and DECREED as follows:

"That the following issues will be tried and determined by the Court at a future setting for oral hearing:

"I. Whether the fact that the Official Ballot adopted by the City Counsel of Homewood for the Special Annexation Election of August 11, 1964, read 'yes' or 'no' in answer to the annexation question while the Ballot on the voting machines employed in the election called for answers 'for' and 'against' resulted in effecting the illegality of said voting-machine Ballots and the voiding of the said Special Annexation Election. This issue is introduced and insisted upon by the Complainant, Morris N. Bouldin.

"II. Whether the Public Notice, required by pertinent statutes, of the holding of said election can be accomplished, within the meaning of said statutes, by general, unofficial notoriety achieved through news media and by other means will suffice to meet said statutory requirements in lieu of explicit compliance with the letter of said statutes. This issue is introduced and insisted upon by the Respondent, City of Birmingham.

"III. Whether illegal collusion was employed by the Complainant, Bouldin, and the Mayor and/or one or more of the members of the City Counsel of the City of Homewood in the prosecution of this instant litigation. This issue is introduced and insisted upon by the Respondent, City of Birmingham.

"IV. Whether any of the activities of the Officials, or any of them, of the City of Homewood, in and about the preparation for, calling of and holding of the aforesaid Annexation Election were in violation of the equitable principle of 'unclean hands' so as to effect an estoppel of the right of the City of Homewood or of the Complainant, Morris N. Bouldin

to assert the alleged invalidity of the aforesaid Annexation Election. This issue is introduced and insisted upon by the Respondent, City of Birmingham."

After a full hearing, the trial court made the following findings:

"The Court finds that the use of the unofficial ballot in the voting machines for registering a vote either 'for' or 'against' the proposed annexation proposition did not render the election void for failure to use the official ballot prescribed in the municipal ordinance calling for said annexation election.

"The Court finds from the evidence that the Birmingham defenses of unclean hands, collusion and estoppel have not been sustained, and further finds that general unofficial notoriety is not sufficient or adequate to meet and overcome the mandatory provisions of Act No. 663 of the 1961 Legislature of the State of Alabama regarding notice of special municipal elections."

Pursuant to this last finding, the court decreed that the election was void.

Appellant asserts in brief:

"All of the assignments of error involve the same basic question of law; and that question is whether the Circuit Court erred in nullifying the annexation election held in Homewood on August 11, 1964, whereat the majority of electors voted in favor of annexing Homewood to Birmingham. * * *"

Appellant's first contention is that "Bouldin was not entitled to any relief, because he failed to prove an essential averment of his bill—the averment that the omission of the sixty day notice prevented 'many qualified voters from voting' whose votes 'would have changed the result of the election'; and Homewood is not entitled to any relief because it neither averred nor proved that the omission of said notice affected the result of the said election."

We cannot agree for two reasons. First, the trial court had called a pre-trial conference to determine the issues and had defined them in the decree set out supra. There was no objection to the "Decree on Pre-trial" and the issues were limited to those there delineated. Proof was limited to those issues. Secondly, the result or claimed result of the election would be immaterial if the court found, as it did, that the election was void.

Appellant's second contention is that "The suit should be dismissed because it is a collusive suit which Mayor Walker and others secured Bouldin to file in his name for the purpose of nullifying the election on the ground that the Homewood officials failed to give proper notice of the election, the attorneys who filed the suit in Bouldin's name being selected by Walker and others, not including Bouldin, and the said attorneys being compensated by money raised by Walker and others."

Appellant's position is that Homewood is estopped to claim that the election was void because the sixty-day notice was not given, for the reason that Homewood officials called the election and gave what they thought was the proper notice. And since Homewood was estopped, Bouldin, as a citizen and taxpayer of Homewood, was merely doing what Homewood could not do, but was in collusion with Homewood officials in filing his suit.

We dismiss this contention. This is not a collusive suit. It has been as fiercely litigated as any case we have considered in recent years.

. There is no collusion or fraud or wrong doing in the filing and prosecuting of a test case for obtaining a judicial decree on a question which is disputed or on which some doubt has been cast, even though both parties, plaintiff and defendant, desire that the suit shall be decided in a given way. Examples of this are suits to question tax levies, proposed bond issues, and suits to test the title of real estate.

This rule is particularly true where the question to be decided is of public importance. Blaize v. Hayes, 204 La. 263, 15 So.2d 217 [7].

The City of Birmingham had invited several adjoining municipalities to become annexed to Birmingham under Tit. 37, § 188, and they held elections similar to the one held by Homewood. As we understand it, none of them except Mountain Brook gave the required sixty-day notice. The notice factor was not important because in all of the municipalities except Homewood, the annexation was defeated. Birmingham has argued in this court that any notice exceeding thirty days would be legal and sufficient. There was a disputed question and it was of public importance that it be settled.

Certainly Bouldin had a right to raise the question of the lack of the sixty-day notice, and his suit was not colllusive merely because the elected officials of Homewood hoped his contention would prevail, and some of them, as individuals, helped raise money for the litigation.

Appellant's third contention is that "The provisions of Act 663 of the Legislature of Alabama of 1961 (Ala.Acts, 1961, p. 828) regarding notice did not apply to the annexation election held in Homewood."

Appellant has the right to raise this question because of Tit. 13, § 28, Code 1940, which permits a question, decided on a former appeal, to be presented again on a subsequent appeal in the same case. We have considered this contention again and are convinced that it was properly decided on first appeal and we reaffirm our decision on that question. Bouldin v. City of Homewood, 277 Ala. 665, 174 So.2d 306.

Appellant's fourth contention is that "If it should be held that said Act 663 applied to the annexation election held in Homewood, the said election is not invalidated by omission to give the notice provided for by Act 663 inasmuch as the Homewood elec-

torate was otherwise generally informed of the time, place and purpose of said election and voted generally on the question submitted, and the said omission did not affect the result of the election; and it is especially true that the omission to give such notice does not invalidate the said election, inasmuch as the attack upon the election is made by one who participated therein and by public officials who failed to perform their duty to give the notice."

■ This contention is in two parts. We have disposed of the second part in our discussion of the second contention. The first part of this fourth contention is that everybody knew about the notice because of the publicity and notoriety given it. We agree that the record shows beyond peradventure that there was much publicity and public interest in the election.

In Special Tax School District No. 1 of Duval County v. State, Fla., 123 So.2d 316, the Supreme Court of Florida said:

"Concerning the question of whether there was a compliance with the provision of the law relating to the publication of the notice of reregistration, we have heretofore pointed out that such notice was published in the form of a legal advertisement in only one issue of the newspaper whereas the statute requires that said notice be published once each week for four consecutive weeks. Petitioners' argument that the wide-spread publicity appearing in the press and on television and radio during each day from prior to the date of the first publication of this notice to and including the date of the election constituted a substantial compliance with the requirement of the statute cannot be sustained. Nor do we believe that any extended discussion of such nebulous argument is necessary to justify this conclusion. Special elections, and particularly those which might result in requiring the exercise of the power of taxation, must be conducted in substantial compliance with constitutional and statutory requirements.

Newspaper articles or comments or publicity by television or radio cannot lawfully substitute for the mandatory requirements of the law. * * *"

An annotation in 121 A.L.R. 990, states:

"With reference to the submission of special questions, the rule which appears to receive the support of the greater number of cases is that where the election is held on a day other than that set in the statute, the election is void, the statute being regarded as mandatory."

We think the cited authority is sound and, applying it to the instant case, we cannot agree with the first part of appellant's fourth contention.

We do refer to one argument made by appellant. It argued that Alabama, by our decisions, is a "substantial compliance" state; Swain v. Tuscaloosa County, 267 Ala. 509, 103 So.2d 769; Opinion of the Justices, 267 Ala. 666, 104 So.2d 696; that our decision on first appeal was based on McAdams v. Ne Smith, 252 Ala. 178, 40 So.2d 84; that the *McAdams* case was decided prior to the *Swain* case and the Opinion of the Justices, cited supra; that under the substantial compliance doctrine, the thirty-one day notice was substantial compliance.

The *McAdams* case held that where the statute required that notice of a *special* election be published in a newspaper for three successive weeks, a failure so to do (it was published only once) invalidated the election, because the statutory requirements as to a *special* election were mandatory and not directory. We note that in the Florida case, 123 So.2d 316, supra, the statute required publication of the notice for four successive weeks and the notice was published only once. The Florida court said that "[O]ne publication of the notice cannot conceivably be construed to be a substantial compliance" with the statute when a special election was involved.

In the *Swain* case, supra, a majority of this court held that in a statewide amendment relating to Tuscaloosa County, there

was a substantial compliance with the provisions of Section 284 of the Constitution even though the notice of proclamation was published erroneously in Bibb, Macon and Mobile Counties.

In Opinion of the Justices, 267 Ala. 666, 104 So.2d 696, a majority of the Justices opined that a constitutional amendment was validly adopted under the substantial compliance doctrine where the first paragraph of the amendment was omitted from the proclamation published in sixty of the sixty-seven counties of the state. In other words, notice of the election was given in all the counties, as to time, place and the question to be voted on, but the fact that the amendment limited the proposed bond issue to $3,000,000 was not made known in the notice published in sixty counties.

Both the *Swain* case and the Opinion of the Justices, cited supra, dealt with proposed constitutional amendments where the proclamation or notice of the election was not uniform, being erroneous in more than one county of the state.

But the matter of notice involves two aspects. First is the actual notice of the election, the number of times and weeks it must be published. We have held that as to elections on amendments to the Constitution, we follow the substantial compliance doctrine.

The second aspect of notice involves the minimum lapse of time from the ordering of the election to the actual holding of the election. Our Constitution, Section 284, as amended, (Amendment No. 24), requires that elections on proposed constitutional amendments "be held either at the general election next succeeding the session of the legislature at which the amendments are proposed or upon another day appointed by the legislature, not less than three months after the final adjournment of the session of the legislature at which the amendments were proposed."

█ We have been cited to no case where this court has held that such a requirement is not mandatory and can be met by substantial compliance. An election on a proposed constitutional amendment held thirty days after the adjournment of the Legislature and not at a general election would not be substantial compliance.

█ Here, Act 663, listed as Tit. 37, § 34(21) (22), requires that special elections be held on any second or fourth Tuesdays between April 15 and the second day of the following February and that notice of a special election be published on or before the applicable Tuesday of the second month preceding the month in which the election will be held.

This means that the electorate must have sixty days notice of the election, and any shorter lapse of time cannot be permitted. Here, the Homewood Council decided on July 6, 1964, that the election should be held, and set the date for August 11, 1964, a second Tuesday. Thus, there was only a time lapse of thirty-six days from the calling to the holding of the election, and the notice was only thirty-one days. The thirty-one day notice given in the Homewood election is not substantial compliance with the mandatory sixty-day notice required by statute. The "substantial compliance" doctrine cannot be here applied.

Having reaffirmed that the election held on August 11, 1964, was void because the statutory notice was not given for this special election, we see no reason for discussion, of appellant's fifth contention.

It follows that the decree of the trial court should be affirmed as to appellant's assignments of errors on its appeal.

*The Cross Appeal*

In its cross bill, Homewood asked for a declaratory judgment as to whether Birmingham could legally annex Homewood or whether they could be voluntarily consolidated under existing statutes. The trial court held that the two cities could be consolidated or annexed under the present statutes.

The position of Homewood is that the decree of the lower court is entirely correct in finding that the evidence submitted to the court failed to sustain the Birmingham defenses of unclean hands, collusion and estoppel as against the City of Homewood; that the special election of August 11, 1964 was void because general unofficial notoriety was not sufficient to overcome the mandatory provisions of Act No. 663 of the 1961 Legislature of Alabama regarding notice of special municipal elections; that the temporary injunction preserving the status quo between Homewood and Birmingham was properly made permanent and that jurisdiction of the cause to direct the disposition of the tax monies involved and to guide and protect the governmental agencies and officials affected was properly reserved by the court.

The errors are charged in the following from the decree of the court that:

"(3) Under the provisions of Section 188, Title 37, Code of Alabama, 1940, the Cities of Birmingham and Homewood may be voluntarily consolidated and the territory of the City of Homewood annexed to the territory of the City of Birmingham.

"(4) Sections 191–194, Title 37, Code of Alabama, 1940, are not applicable to a voluntary consolidation or annexation under the provisions of Section 188, Title 37, Code of Alabama, 1940."

Homewood argues that § 188 of Tit. 37, does not stand alone but is a part of, and must be considered with, §§ 189–194; that when so considered it is impossible for Homewood and Birmingham to be consolidated by elections because § 191 requires the consolidated city to be divided into wards prior to the effectuation of such annexation; and that Birmingham has a mayor and council system of government and under the organic law of its creation, Birmingham cannot be divided into wards with the election of councilmen from each ward. Hence, it is contended, that since Birmingham must elect its councilmen at large, there is no present law by which Homewood can be annexed to or consolidated with Birmingham.

If this argument be accepted, no cities could be annexed, merged or consolidated unless both had a mayor-ward-council form of government. This would exclude all cities with the commissioner form of government because, as noted in Homewood's brief, the "choice of a commissioner-non-council form of municipal government was not available until 1911," and §§ 188–194 were enacted in 1907.

We are not inclined to reply to the many various arguments raised in the several briefs on this matter.

We have concluded that Tit. 37, § 188, is independent of the sections following it, and if "it is the purpose to annex a city or town to another municipality," then the procedure prescribed by § 188 is to be followed. This section was followed in the instant proposed annexation. We think § 190 et seq., has to do with the consolidation of two or more municipalities into a new city.

We note that we ordered an election to be held in Muscle Shoals to decide whether it desired to be annexed to Sheffield in 1956. And it is interesting that the Town of Muscle Shoals was at that time governed by a Board of Commissioners. Homan v. State ex rel. Smith, 265 Ala. 17, 89 So.2d 184.

The trial court did not err in its conclusions stated in paragraphs (3) and (4) of its decree.

Homewood also charges that the court erred in sustaining objections to the testimony of witnesses offered by Morris N. Bouldin and City of Homewood that there were twelve or more nonresidents of the City of Homewood who voted in the special municipal election held in the City of Homewood on August 11, 1964, in accordance with the written stipulation of

parties approved by the trial judge, which is in words and figures as follows:

" 'It is stipulated that Bouldin and Homewood will produce upon the trial of this cause twelve or more witnesses and will seek to show by each of these witnesses that they were non-residents of the City of Homewood upon the date of said election; that they had no legal right to vote in said election and that, notwithstanding, they did cast their votes therein and voted for the annexation of Homewood to Birmingham. It is further stipulated that Birmingham will object to such testimony and the Court, consistent with its prior ruling, would sustain such objection and deny Bouldin and Homewood the right to introduce such testimony in proof of said issue. It is further stipulated that it will not be necessary for Bouldin and Homewood to produce said witnesses and attempt to elicit such testimony and that for the purposes of this trial it will be considered that such witnesses were, in fact, produced, that an attempt was made to introduce the evidence above described, that Birmingham objected to the questions eliciting such testimony, that such objections were by the Court sustained, and that Bouldin and Homewood duly and legally reserved an exception, separately and severally.' "

It is not necessary to decide this question. The moment the trial court decided that the election was void on account of the failure to give the notice required by statute, Act No. 663, the matters in cross-assignment (3) became immaterial. We are not to be understood as holding that the trial court did or did not err in the rejection of this testimony. But assuming, for the sake of argument, that the trial court was in error in rejecting this evidence, it could only be error without injury in view of the holding that the election was void. The result of a void election is of no legal consequence.

It follows that the cross-assignments of error are without merit.

The decree of the trial court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.