0676

HORRY COUNTY, a body politic, and The Horry County Airport Commission, Appellants v. CITY OF MYRTLE BEACH, a body politic; Lakewood Pleasure Park, Inc., a South Carolina corporation; Phillip E. Perry, C. Shannon Perry, Donald E. Perry and Barbara P. Jones, d/b/a Perry Issue Company, a South Carolina Partnership; the South Carolina National Bank as Trustee; and Ponderosa Inc., a South Carolina corporation, Respondents.

(343 S. E. (2d) 36)

Court of Appeals

---

*Michael H. Quinn* and *Robert E. Staton,* of *Quinn, Brown, Staton & Boyle,* Columbia, *for appellants.*

*E. Windell McCrackin,* of *McCrackin & Barnett, David R. Gravely* and *Claude M. Epps, Jr.,* of *Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers,* Myrtle Beach, *for respondents.*

Heard Feb. 24, 1986.

Decided April 7, 1986.

GOOLSBY, Judge:

The appellants Horry County and Horry County Airport Commission brought this action seeking a declaration that an ordinance enacted by the respondent City of Myrtle Beach approving leases to certain property and terminating existing leases was invalid because of the City's failure to follow procedures prescribed by the City Code for the enactment of municipal ordinances. The trial court upheld the ordinance, finding that the City and the other respondents, Lakewood Pleasure Park, Inc., Phillip E. Perry, C. Shannon Perry, Donald E. Perry, and Barbara Jones doing business as Perry Issue Company, South Carolina National Bank, and Ponderosa, Inc., (hereafter, the "lessees") had substantially complied with the City Code, that Horry County and the Commission had notice of the ordinance and had benefited by the ordinance, and that the lessees had spent substantial monies in reliance on the validity of the leases. We reverse.

The City owns the property that is the subject of this action. It acquired the property in 1948 from the United States of America. A release executed by the Administrator of Civil Aeronautics in 1953 on behalf of the United States of America recited that the City had obligated itself in 1953 by the enactment of an ordinance to use the revenues derived from the lease of the subject property for the operation of either the Myrtle Beach Municipal Airport or another public airport serving the Myrtle Beach area. The Airport Commission now receives these revenues pursuant to the 1953 ordinance and other agreements.

The City divided the subject property, which consists of 143 acres, into three parcels. A thirty-year lease set to expire on September 10, 1993, and owned by Golden Cove, Inc., encumbered each parcel.

In late 1981, Golden Cove and the City commenced negotiations with Lakewood Pleasure Park to lease the three parcels for the operation of an amusement park. Shortly after the start of these negotiations, the City's mayor met with the Airport Commission's chairman and its director to discuss the proposed leases.

At a meeting conducted on February 16, 1982, the City Council gave first reading to an ordinance approving the execution of the leases which the City and Golden Cove had negotiated with the lessees. The Airport Commission's director attended this meeting.

The ordinance received its second and final reading at the meeting held by the City Council on February 26, 1982, and attended by several members of the Airport Commission. The City Council at the same meeting adopted the ordinance approving the leases.

Immediately after the adoption of the ordinance, the City executed agreements by which it leased the three parcels to the lessees.

As a consequence of the new leases, the Airport Commission receives greater revenues than it received under the old leases.

In 1982 and 1983, the lessees paid large sums for capital improvements, rental payments and taxes in reliance on the validity of their respective leases.

Horry County and the Airport Commission commenced this action seven months after the City executed the three leases. Shortly before the challenged ordinance received its final reading, however, the Airport Commission sought, without success, to enjoin the City from approving the leases.

Horry County and the Airport Commission contend that the ordinance is invalid because the City failed to follow, even substantially, several requirements of the Myrtle Beach Code relating to the enactment of ordinances. We need not address each allegation that Horry County and the Airport Commission level against the ordinance because their complaints concerning the City's failure to adhere to mandatory provisions respecting notice and publication are themselves enough to invalidate it.

Section 1-3-21(a)(8) of the Myrtle Beach Code requires the City Council to enact an ordinance in order to "lease or authorize the ... lease of any lands of the city." Without any question, the subject property is "land[ ] of the city." Before it could be leased, then, an ordinance was plainly required.

Section 1-3-23 prescribes the notice required for the introduction and adoption of certain ordinances relating to "public property." It provides in part:

> Prior to the introduction of an ordinance granting a
> ... right for the use of any ... public property, ... the
> applicant for the ordinance shall publish a notice in
> three (3) issues of a newspaper having general circula-
> tion in the city stating the nature of the ... right sought
> ... and the date on which the application is to be pre-
> sented to council which shall be at least one (1) week
> after the last notice.

Clearly, the subject property is "public property" within the meaning of Section 1-3-23 and the definition generally accorded the term. *See* 73 C.J.S. *Property* § 13b at 183 (1983); 63 Am. Jur. (2d) *Property* § 10 at 298 (1972); 35 WORDS AND PHRASES, "Public Property" (1963). Simply stated, "public property" is property owned or controlled by a pub-lic entity. *Mamola v. San Bernardino County*, 94 Cal. App. (3d) 781, 156 Cal. Rptr. 614 (1979).

Although the City and lessees argue the notice provisions of Section 1-3-23 do not apply to a proposed ordinance au-thorizing the lease of "public property" that "is not public in its use," we believe they do apply. We therefore refuse to limit the ordinance's application only to streets and other property owned by the City and utilized by the public in general and hold that Section 1-3-23's notice provisions were applicable to the ordinance under attack here.

The record reflects that "the applicant[s] for the ordi-nance" in question included those primarily interested in effecting a change in the existing leases, namely, the lessees. As applicants, they shared responsibility with the City to follow Section 1-3-23's notice provisions.

Under Section 1-3-23, a notice of application for an ordinance granting a person a right to use public property must explain the nature of the right sought by the applicant and must disclose the date on which the applicant will submit the application to the City Council. Further, the notice "shall" be published three times in a newspaper having general circulation within the City and the publication of the third notice "shall" take place at least one week before the applicant submits the proposed ordi-nance to the City Council.

The City and the lessees do not contend that the three notices required by Section 1-3-23 were ever formally pub-

lished. In fact, they admit these notices were not formally published at all. Instead, they argue that a news article appearing in *The Sun News* satisfied Section 1-3-23's notice requirements and served to bring the procedures employed in adopting the questioned ordinance into substantial compliance with these requirements.

*The Sun News* printed the article on February 16, 1982, the day of the meeting at which the City Council received the application for the ordinance. The article merely recited that the council at its 7:30 p.m. meeting would "look at a change in the lease agreement for a 143-acre amusement park-campground complex on U. S. 17 south of the city" because of "[a] major British amusement company's desire to operate a Lighthouse theme park" on the property.

We need not determine whether the news article sufficiently stated the nature of the right sought by the proposed ordinance because other requirements prescribed by Section 1-3-23 were not substantially met. Obviously, a single news article published on the same day an application for an ordinance is to be presented to the City Council does not substantially conform to Section 1-3-23 requirements that a notice be published three times and that the publication of the third notice occur at least one week before the presentation of the application.

Section 1-3-25 also prescribes publication requirements. 3 It provides in part:

> After an ordinance is in proper form and required notices have been given, the ordinance shall be held by the city clerk for public inspection. . . . The ordinance must be listed by title at least once and published in a local paper at least six (6) days before the second reading; . . . .

Nowhere does the record show that the ordinance was listed by title and published in a local paper at least six days before the City Council gave the ordinance its second reading on February 26, 1982. Again, however, the City and the lessees argue substantial compliance. They point to a news release and to two newspaper articles.

One article appeared in *The Sun News* on February 17, 1982, and reported the action of the City Council at its

meeting on February 16, 1982. The article did little more than to mention that a proposed contract to locate a major amusement park on the subject property received its first reading and that the proposed lease would produce an additional $140,000 in annual revenues. It contained no reference to the other two lease proposals.

The news release went out on February 22, 1982, less than four days before the ordinance was to receive its final reading. It advised the news media that the City Council at an 8:30 a.m. meeting on February 26, 1982, would give a second reading to "an ordinance to lease approximately 143 acres located on U. S. 17 South." The news release did not mention that, in fact, three leases were contemplated and it did not name the proposed lessees.

Another news story appeared on February 25, 1982. It simply stated that "[a] proposed lease for new operators of a U. S. 17 amusement park south of the city is up for final approval at a special Myrtle Beach City Council meeting 8:30 a.m. Friday," February 26, 1982. The article failed to disclose that the ordinance would involve two other proposed leases. It also neglected to disclose the names of the proposed lessees.

Neither the news release nor the two newspaper articles substantially satisfied the requirements of Section 1-3-25. The news release and second news story, besides being incomplete, were not "published" at least six days before the second reading. Although the first news article appeared well in advance of the second reading, it falls far short of constituting a publication of the proposed ordinance.

■ Compliance with both Section 1-3-23 and Section 1-3-25 was necessary to the validity of the ordinance attacked by Horry County and the Airport Commission if their provisions are considered mandatory. *See* 82 C.J.S. *Statutes* § 374 at 868 (1953).

In determining whether a statute is to be construed as mandatory or directory, the prime objective is to ascertain the legislative intention. 73 Am. Jur. (2d) *Statutes* § 19 at 280 (1974); 82 C.J.S. *Statutes* § 376 at 869-70 (1953). Legislative intention concerning the mandatory or directory nature of a statute is determined primarily from the language the stat-

ute employs. 73 Am. Jur. (2d) *Statutes* § 22 at 281 (1974); *see* 82 C.J.S. *Statutes* § 376 at 871-72 (1953).

Section 1-3-23 twice uses the word "shall" in prescribing notice requirements for the introduction of an ordinance granting a person the right to use public property. Section 1-3-25 employs the word "must" in requiring publication of an ordinance before its final reading. The words "shall" and "must" are generally regarded as making a provision mandatory. 73 Am. Jur. (2d) *Statutes* § 22 at 281 (1974).

We are thus compelled to construe the provisions of Sections 1-3-23 and 1-3-25 as mandatory, particularly since the spirit and purpose of the ordinance do not require a contrary construction. *See* 62 C.J.S. *Municipal Corporations,* § 442a at 841 (1949).

Indeed, provisions regarding notice of ordinance and publication are generally considered mandatory. 5 MCQUILLIN, MUNICIPAL CORPORATIONS § 16.78 at 249 (3rd ed. 1981); *see* 56 Am. Jur. (2d) *Municipal Corporations, Counties, and Other Political Subdivisions* § 350 at 376 (1971).

Where provisions concerning notice of ordinance and publication are deemed mandatory, a failure or a substantial failure to give notice or to publish in the manner prescribed renders the ordinance void, "even where ... newspapers reported the pendency of the measure as an ordinary news story." 5 MCQUILLIN , *supra,* at 249. Newspaper articles cannot lawfully substitute for mandatory publishing requirements. *Vincent v. City of Bowling Green,* 349 S. W. (2d) 694 (Ky. 1961); *Ashcraft v. Estill County,* 290 S. W. (2d) 31 (Ky. 1956); *Special Tax School District No. 1 of Duval County, Fla. v. State,* 123 So. (2d) 316 (Fla. 1960).

Very clearly, the provisions requiring notice and publication were designed to protect the citizens of the City and other interested parties, to enable them to acquire knowledge of ordinances affecting their interest, and to serve as a restriction upon the actions of the mayor and council. *Mid-Georgia Natural Gas Co. v. City of Covington,* 211 Ga. 163, 84 S. E. (2d) 451 (1954); 62 C.J.S. *Municipal Corporations* § 427a at 817 (1949). The City and the lessees completely ignored these provisions. Their failures to comply substantially with the notice and publication requirements mandated by Sections 1-3-23 and 1-3-25, therefore, render the ordinance au-

thorizing the three leases illegal and void even though Horry County and the Airport Commission had actual notice that the ordinance was being proposed.

In upholding the ordinance, the trial court relied upon *Watson v. Jennings*, 146 S. C. 372, 144 S. E. 78 (1928), *Phillips v. City of Rock Hill*, 188 S. C. 140, 198 S. E. 604 (1938), *Kerr v. City of Columbia*, 232 S. C. 405, 102 S. E. (2d) 364 (1958), and *Lathem v. City of Greenville*, 256 S. C. 586, 183 S. E. (2d) 455 (1971). The trial court's reliance on these cases, however, was misplaced.

In *Watson*, the City of Orangeburg, unlike the City of Myrtle Beach in the instant action, gave the public "due notice of all proceedings" that it took relating to the action in question. 146 S. C. at 380, 144 S. E. at 81.

The *Phillips* case dealt with a clearly directory statute involving municipal bond elections.

The Supreme Court limited its consideration of the proceedings leading to the adoption of the Eau Claire zoning ordinance questioned in *Kerr* to the particular facts of that case, which facts differ considerably from those involved here.

The *Lathem* case concerned a directory provision contained in a city ordinance relating to street improvements.

The trial court also upheld the ordinance because the Airport Commission benefited from its enactment and the lessees relied on the validity of the ordinance in executing the leases. Neither consideration, however, is a proper basis for validating the ordinance.

Because mandatory notice and publication requirements were involved and, as we have found, there was no substantial compliance with the ordinances prescribing these requirements, Horry County and the Airport Commission were not required to show that the ordinance prejudiced them in some way. *See Hopper v. Board of County Commissioners*, 84 N. M. 604, 506 P. (2d) 348 (N. M. App. 1973), *cert. denied*, 84 N. M. 592, 506 P. (2d) 336 (1973). The fact, therefore, that the Airport Commission benefited from the new leases authorized by the ordinance in question is irrelevant.

As procurers of the ordinance granting them the leases in this case, the lessees were charged with knowledge of these laws and of their limitations upon the council's power to

adopt ordinances. *Mid-Georgia Natural Gas Co. v. City of Covington, supra; cf. LaBruce v. City of North Charleston,* 268 S. C. 465, 234 S. E. (2d) 866 (1977) (citizens are charged with knowledge of existing law and cognizance of city ordinance is presumed). Their reliance, then, upon the validity of the ordinance authorizing the three leases was not reasonably justified. The lessees have only themselves to blame for ignoring plain and unambiguous mandatory requirements concerning notice and publication.

For the foregoing reasons, the judgment appealed from is

Reversed.

CURETON, J., and LITTLEJOHN, Acting J., concur.